KRON MEDICAL CORPORATION, Plaintiff v. COLLIER COBB & ASSOCIATES, INC., and JACK SMITH, Defendants

No. 9115SC262

(Filed 1 September 1992)

1. Unfair Competition § 1 (NCI3d) — unfair insurance practice — private remedy — role of jury and judge

In an action seeking a private remedy under N.C.G.S. § 75-16 for an unfair trade practice by a violation of the unfair insurance practice statute, N.C.G.S. § 58-63-15(1), it is ordinarily for the jury to determine the facts and for the court, based on the jury's findings, to determine as a matter of law whether the defendant engaged in an unfair or deceptive insurance practice constituting an unfair or deceptive trade practice.

Am Jur 2d, Consumer and Borrower Protection § 302; Insurance § 2031.

2. Unfair Competition § 1 (NCI3d) — failure to disclose information — unfair insurance practice

A failure to disclose information may be tantamount to a misrepresentation and thus an unfair or deceptive insurance practice in violation of N.C.G.S. § 58-63-15(1).

Am Jur 2d, Consumer and Borrower Protection § 298.

3. Unfair Competition § 1 (NCI3d) — unfair trade practice — unfair insurance practice — unrefundable premium — failure to disclose

The trial court erred in entering judgment n.o.v. for defendant broker and defendant agent on plaintiff's unfair trade practice claim based on a violation of the unfair insurance practice statute where defendants had a fiduciary duty to plaintiff, and the jury found that defendants knew or should have known that plaintiff believed that the rate structure for a medical malpractice policy procured for plaintiff by defendants included a "deposit premium" which was partially refundable if actual coverage used was less than projected coverage and that defendants failed to explain to plaintiff that no portion of the premium was refundable. Defendants' silence when they had a duty to speak and knowledge of plaintiff's misunderstanding constituted an unfair or deceptive insurance practice.

KRON MEDICAL CORP. v. COLLIER COBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

**Am Jur 2d, Consumer and Borrower Protection §§ 296, 298; Insurance § 138.**

**4. Insurance § 943 (NCI4th) — failure to inquire about policy language — contributory negligence — instructions — education and business experience**

In an action against an insurance agent and broker for negligence in the procurement of a medical malpractice insurance policy for plaintiff corporation, the trial court did not err in instructing the jury that it could consider the education and business and professional experience of plaintiff's agent in determining whether he was contributorily negligent in failing to inquire of defendants concerning policy language where the trial court repeatedly emphasized that the standard of care was ordinary care and specifically charged the jury not to hold plaintiff's agent to a higher standard simply because he was a physician.

**Am Jur 2d, Insurance § 2030.**

APPEAL by plaintiff from orders entered 2 August 1990 and 10 September 1990 by *Judge D. B. Herring, Jr.*, in ORANGE County Superior Court. Heard in the Court of Appeals 7 January 1992.

*Long & Long, by Lunsford Long, for plaintiff-appellant.*

*Moore & Van Allen, by Laura B. Luger, E.K. Powe, and N.A. Ciompi, for defendant-appellees.*

PARKER, Judge.

In this civil action, plaintiff appeals from the entry of judgment notwithstanding the verdict and denial of its motion for a new trial. Plaintiff's complaint and amended complaint alleged claims for negligence, breach of contract, and unfair or deceptive insurance practices constituting unfair or deceptive trade practices pursuant to N.C.G.S. § 75-1.1.

Plaintiff's claims arose from defendants' procurement of medical malpractice insurance policies for plaintiff. Plaintiff's only allegations as to damages were that it had overpaid premiums plus sales tax in the amount of (i) $68,817.00 for the policy year 1985-86 and (ii) $107,521.05 for the policy year 1986-87. Defendants filed answers denying liability as to all claims and raising the defenses of plain-

tiff's (i) contributory negligence as against the negligence claim and (ii) failure to minimize damages as against the breach of contract claim.

After a four day trial, the jury (i) found for defendants on the negligence claim; (ii) found defendants breached the contract but plaintiff failed to mitigate damages; (iii) answered the special interrogatories on the unfair or deceptive trade practices claim in favor of plaintiff; and (iv) awarded $107,521.00 in damages. In its judgment on the verdict for plaintiff, the trial court found that the acts as found by the jury constituted unfair or deceptive acts within the meaning of N.C.G.S. § 75-1.1. The court concluded as follows:

> 1) The acts and omissions of the Defendants were in and affected commerce, as stipulated by the parties.

> 2) The business of the Plaintiff was injured by reason of such acts and omissions . . . of Defendants, as found by the Jury.

> 3) Said acts, conduct, and practices [constitute] violations of N.C. Gen. Stat. § 75-1.1.

> 4) The actions of Defendants . . . as found by the Jury, are unfair, deceptive, violative of public policy, and substantially injurious to Plaintiff.

> 5) As a matter of law, the damages returned by the Jury should be trebled pursuant to N.C. Gen. Stat. § 75-16.

Defendants moved in timely fashion both for entry of judgment notwithstanding the verdict for plaintiff or to amend the judgment and alternatively for a new trial. After a hearing on 23 July 1990, by order entered 2 August 1990 the trial court granted defendants' motions for judgment notwithstanding the verdict and to amend the judgment. The trial court did not rule on defendants' motion for a new trial. The order states as follows:

> 3. The following judgment is hereby entered in place of the judgment herein vacated:

>> Defendants' actions as found by the jury in answers to issues [relating to unfair or deceptive insurance practices] are not unfair and deceptive acts or practices as

KRON MEDICAL CORP. v. COLLIER COBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

a matter of law within the meaning of N.C. Gen. Stat. [§§ 58-63-15(1) or 75-1.1].

On 2 August 1990 plaintiff moved both to amend this new ("second") judgment and for a new trial. As grounds for a new trial plaintiff alleged "error of law occurring at the trial and objected to by Plaintiff in connection with the submission of the issue of and instructions on the defenses of contributory negligence and avoidable consequences." By order entered 10 September 1990 the trial court denied plaintiff's motions.

Plaintiff gave notice of appeal from entry of the second judgment and from denial of the motions to amend or for a new trial. Plaintiff's notice of appeal was filed 13 September 1990, more than thirty days from entry of the second judgment. However, as the filing of plaintiff's motion for a new trial tolled the time for taking appeal from the second judgment, *see* N.C.R. App. P. 3(c)(4), plaintiff has given timely notice of appeal to this Court.

Plaintiff has brought forward four assignments of error in its brief. These assignments of error are grouped under two contentions. Plaintiff first contends the trial court erred in entering judgment notwithstanding the verdict, because the verdict, in light of the stipulations of the parties and of other facts, established that the defendants had committed an unfair trade practice in violation of N.C.G.S. § 75-1.1 and plaintiff had been damaged thereby. For reasons which follow, we agree that the court erred in entering judgment notwithstanding the verdict for plaintiff and reverse as to this issue only.

North Carolina insurance law provides as follows:

The purpose of this Article [63] is to regulate trade practices in the business of insurance . . . by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts o[r] practices and by prohibiting the trade practices so defined or determined.

N.C.G.S. § 58-63-1 (1991). Defendants argue that the word "all" in this statute means that no unfair or deceptive insurance practices can exist other than those specifically defined in N.C.G.S. § 58-63-15 or determined pursuant to N.C.G.S. § 58-63-40, and that the conduct of defendants in this action is not proscribed by any provision of N.C.G.S. § 58-63-15.

KRON MEDICAL CORP. v. COLLIER COBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

Among practices expressly defined to be unfair or deceptive is "[m]aking . . . or causing to be made . . . any . . . statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby." N.C.G.S. § 58-63-15(1) (1991). The predecessor to this section, section 58-54.4(1), cited in plaintiff's complaint, did not differ in its language. A violation of section 58-63-15(1) "as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986) (construing section 58-54.4). The relationship between the insurance statute and the more general unfair or deceptive trade practices statutes is that the latter provide a remedy in the nature of a private action for the former. *Id.* (stating that insurance commissioner's enforcement is not the exclusive remedy for unfair trade practices in the insurance industry, as section 75-16 authorizes a private cause of action and "mandates the automatic assessment of treble damages once a violation of section 75-1.1 is shown."). In the present case the question then is whether defendant Smith made or caused to be made a statement misrepresenting the terms of the policies of insurance issued to plaintiff.

Evidence at trial showed plaintiff is a North Carolina corporation engaged in providing physicians' and surgeons' *locum tenens* services throughout the United States. Plaintiff's president and founder, Dr. Alan Kronhaus, was a pioneer of the concept of temporary replacements for doctors in rural areas. Dr. Kronhaus testified that medical malpractice insurance was the lifeblood of his business; but when he began the business, the only malpractice insurance available was location specific. Nevertheless, for the policy year 18 November 1982 through November 1983, Dr. Kronhaus was able to purchase from a broker other than defendant Cobb malpractice insurance covering many states. The policy's declarations page showed the premium amount was $30,060.00. Among endorsements listed was "4. Premium and Audit Endorsement, Schedule of Positions and Rates." This endorsement read in pertinent part

> Upon expiration of this policy, the Insured shall furnish to [the underwriter] a statement of the Insured's actual total premium base as specified herein for the policy period. The actual earned premium shall be computed thereon at the premium rate specified herein. If the actual, earned premium is more than the deposit premium the Insured shall pay the difference to the Company; if less, the Company shall refund

the difference to the Insured except that the Company shall be entitled to the minimum premium as stated in the Declarations.

The word "minimum" did not appear on the declarations page.

Dr. Kronhaus testified his understanding of the endorsement was that it rendered the policy an "audit" policy under which plaintiff paid only for insurance actually used. Calculation of the annual premium, also known as a deposit premium, was based on plaintiff's projections as to how much malpractice insurance would be needed. George Sheppard, senior vice president for defendant Cobb, testified he believed the endorsement provided for a refund, but defendant Smith testified "minimum premium" meant there could be no refund. Smith testified further that he told Dr. Kronhaus the 1982-83 policy carried a minimum premium with no possibility of refund. Plaintiff's expert witness testified the policy provided for refunds. Defendant's expert witness testified that the policy provided for refunds or was ambiguous.

For the 1982-83 policy year and for several years thereafter, actual insurance used exceeded plaintiff's projections and purchases. The demand for plaintiff's services was increasing and plaintiff's sales and recruiting efforts were successful. In July 1983 Dr. Kronhaus began to discuss with George Sheppard and defendant Smith plaintiff's malpractice insurance needs for the policy year 1983-84. Dr. Kronhaus testified he furnished a copy of the 1982-83 policy and emphasized in discussions with Sheppard and defendant Smith that the audit feature, or "refundability," was of great importance to plaintiff. By contrast, defendant Smith testified Dr. Kronhaus neither emphasized nor requested refundability.

Plaintiff's 1983-84 policy, purchased through defendant Cobb, did not include a premium and audit endorsement. Instead, on its declarations page, the 1983-84 policy described the $80,769.00 premium as "Minimum & Deposit." Defendant Smith testified that in meetings with Dr. Kronhaus, it was explained to him that the premium amount was a minimum amount, adjustable only upward, in the event plaintiff used more insurance than the deposit covered. Since 1983-84 was a year in which plaintiff's business experienced growth, plaintiff used more insurance than it had purchased and paid an additional premium.

KRON MEDICAL CORP. v. COLLIER ÇOBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

Similarly, plaintiff's 1984-85 policy, purchased through defendant Cobb, did not include a premium and audit endorsement. On its declarations page, this policy described the $201,631.00 premium as "minimum + deposit." Attachments described included "5. Schedule of Rates." The schedule of rates endorsement included the following language:

> In consideration of the premium paid, it is hereby understood and agreed that the following rates per position will be used for the quarterly reports from the Named Insured. The premium generated by the quarterly reports will be applied against the minimum and deposit premium as indicated in Item 8 of the Declarations, PREMIUM FOR POLICY PERIOD and any excess quarterly premium will be billed.

The six positions set forth described physicians practicing different kinds of medicine. Position 1, rated at $1,339.00 annually, included physicians performing no surgery or obstetrical procedures. Position 6, rated at $10,895.00 annually, included obstetricians and gynecologists and thoracic, vascular, orthopaedic, and neurosurgeons. The required quarterly reports were prepared in plaintiff's accounting department and sent to defendant Cobb to be forwarded to the underwriter. The underwriter converted plaintiff's figures into dollar amounts and sent these back to defendant Smith and plaintiff. Although the 1984-85 premium was more than double that for the previous year, plaintiff's business continued to grow, and thus plaintiff paid an additional premium of $2,100.00 for that policy year.

Neither the 1985-86 nor the 1986-87 policy purchased through defendant Cobb included a premium and audit endorsement. The premium for the former policy was $369,562.00; for the latter the premium was $765,379.00. Each policy's declarations page described the premium as "Minimum + deposit." Each policy included a schedule of rates endorsement similar to that of the 1984-85 policy as quoted above. At no time did Dr. Kronhaus question defendant Smith about the meaning of "minimum & deposit" or "minimum + deposit."

The policy year 1985-86 was the first year in which plaintiff projected more activity than it used. In December 1986, after the close of the policy year in November, Clarence Lane, plaintiff's controller, sent a final quarterly report to defendant Cobb. Dr. Kronhaus testified Lane called defendant Smith in January 1987

to ask when a premium refund would be forthcoming. Lane testified that when he first telephoned defendant Smith in December 1986, Smith stated he would check with the underwriter about a refund. Later in December, Lane telephoned again. Smith said the underwriter had not responded, but he would check again. Lane testified that when he telephoned defendant Smith a third time in January 1987, Smith again said the underwriter had not responded. Later Lane learned that defendant Smith had told Dr. Kronhaus no refund was possible.

By contrast, Smith testified he remembered Lane telephoned him either in early 1987 or March of that year and Smith's response was he would check to see if defendant Cobb had received the underwriter's audit results of the 1985-86 policy year. Since he had never dealt with Lane, defendant Smith called on Dr. Kronhaus in mid-April 1987 to explain that no refund would be forthcoming. Because of Dr. Kronhaus' angry response, defendant Smith travelled to Chicago to attempt to negotiate with the underwriter for a refund. Smith requested that the underwriter "consider amending the minimum and deposit requirement to a lower amount such as 80 percent, etc., under the current policy 11-18-86 to '87." The underwriter declined to make any amendment for either the 1986-87 or the 1985-86 policy.

Upon this and other evidence as to plaintiff's unfair or deceptive insurance practices claim, the jury answered the special interrogatories as follows:

3. Did Defendants do one or more of the following:

A. Describe the rate structure to Plaintiff as being one which included a "deposit premium" from which refunds of premiums would be paid if actual coverage used was found to be less than projected coverage?

ANSWER: NO

B. Fail to explain to Plaintiff that the rate structure did not include a "deposit premium" from which refunds of premium would be paid if actual coverage used was found to be less than projected coverage?

ANSWER: YES

C. Know or have reason to believe that Plaintiff believed the rate structure included a "deposit premium" from which refunds of premium would be paid if actual coverage used was found to be less than projected coverage, yet [fail] to correct Plaintiff's belief?

ANSWER: YES

4. Was the Plaintiff injured or damaged as a proximate result of Defendant's conduct?

ANSWER: YES

8. In what amount, if any, has Plaintiff been injured or damaged?

ANSWER: $107,521.00

The jury's finding on damages is within a few cents of the amount allegedly overpaid for the policy year 1986-87.

[1] In actions under sections 75-1.1 and 75-16, "it is ordinarily for the jury to determine the facts, and based on the jury's findings, the court must then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce." *La Notte, Inc. v. New Way Gourmet, Inc.*, 83 N.C. App. 480, 485, 350 S.E.2d 889, 892 (1986), *cert. denied and appeal dismissed*, 319 N.C. 459, 354 S.E.2d 888 (1987). Since section 75-16 provides the private remedy for section 58-63-15(1), it follows that in cases arising under the insurance statute but seeking the private remedy, the functions of the jury and court are as described in *La Notte*.

[2] Plaintiff argues that under section 58-63-15(1), a failure to disclose information may be tantamount to a misrepresentation and thus an unfair or deceptive practice in violation of the statute. We agree.

"In some circumstances concealment or nondisclosure may be considered as a positive misrepresentation and serve as a basis for actionable fraud." *Rosenthal v. Perkins*, 42 N.C. App. 449, 452, 257 S.E.2d 63, 66 (1979). Describing such circumstances the North Carolina Supreme Court has said

Where there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation.

KRON MEDICAL CORP. v. COLLIER COBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

"Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. [T]he silence must, under the conditions existing, amount to fraud, because it amounts to an affirmation that a state of things exists which does not, and the uninformed party is deprived to the same extent that he would have been by positive assertion." 23 Am. Jur., *Fraud and Deceit*, Section 77.

*Setzer v. Insurance Co.*, 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962) (citations omitted).

With respect to the relationship between insurer and insured, this Court has stated

A fiduciary relationship exists "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). We have often held that an insurance agent is the insured's fiduciary with respect to procuring insurance and advising him as to the scope of his coverage. *E.g., R-Anell Homes, Inc. v. Alexander & Alexander, Inc.*, 62 N.C. App. 653, 659, 303 S.E.2d 573, 577 (1983) (insurance agent has fiduciary duty to keep insured informed about coverage); *see also Gaston-Lincoln Transit v. Maryland Cas. Co.*, 285 N.C. 541, 551, 206 S.E.2d 155, 161 (1974) (plaintiff may rely upon assumption that policy renewed upon same terms and conditions as earlier policy).

*Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 32-33, 376 S.E.2d 488, 496, *disc. rev. denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). The Court stated further

[O]ffering underinsurance coverage to an insured is a tacit representation that the coverage offered has some value. As we have held with respect to [the insurer, the agent's] renewal of plaintiff's minimum limits underinsurance—without disclosing its true value—is evidence of an unfair trade practice which would at the least tend to deceive the average consumer about the extent of his coverage.

*Id.* (citing N.C.G.S. §§ 75-1.1, 58-54.4(1)).

KRON MEDICAL CORP. v. COLLIER COBB & ASSOCIATES

[107 N.C. App. 331 (1992)]

[3] In the instant case, plaintiff did not allege fraud but did allege the existence of a fiduciary duty on the part of defendants by virtue of their roles as agent or broker. Before this Court defendants do not argue plaintiff failed to prove the existence of such a relationship giving rise to a fiduciary duty. The jury found, as plaintiff alleged, that defendants (i) failed to inform plaintiff that the policies did not contain a deposit premium from which refunds would be paid and (ii) knew or should have known plaintiff believed policies brokered by defendant Cobb provided for refunds, yet took no action to explain the meaning of the policy premium provisions or correct plaintiff's misunderstanding. Defendants, having a duty to speak and knowledge of plaintiff's misunderstanding, remained silent and thus misrepresented the terms of plaintiff's policy. Under these circumstances the failure to speak was a statement as deceptive as a false or inaccurate written or oral comment. Even though plaintiff did not allege fraud, this omission does not preclude plaintiff from establishing a claim for unfair or deceptive trade practices. As the Court stated in *Pearce v. American Defender Life Ins. Co.*, 316 N.C. at 470, 343 S.E.2d at 180 "[T]o make out a claim under section 58-54.4 as augmented by section 75-1.1, [plaintiff had to] show only some—but not all—of the same elements essential to making out a cause of action in fraud."

The verdict of the jury upon conflicting evidence is conclusive. *Braswell v. Purser*, 282 N.C. 388, 394, 193 S.E.2d 90, 94 (1972). The jury's findings having effectively brought plaintiff's case within section 58-63-15(1), we conclude the trial court erred in granting judgment notwithstanding the verdict for plaintiff on the claim of unfair or deceptive insurance practices.

[4] Plaintiff's second and final contention is that the trial court erred in denying plaintiff's motion for a new trial. Before this Court plaintiff argues that in its charge on the standard of care for contributory negligence, the trial court erred in instructing that the jury could consider various factors in determining the ability of Dr. Kronhaus, as agent of plaintiff-insured, to exercise the duty of due care. By its objection at the charge conference, plaintiff preserved this error for appellate review. *Wall v. Stout*, 310 N.C. 184, 189, 311 S.E.2d 571, 575 (1984).

The due care required in fixing responsibility for negligence is the rule of the prudent person. The standard is always that care which a reasonably prudent person should exercise under the

same or similar circumstances. *Butler v. Allen*, 233 N.C. 484, 486, 64 S.E.2d 561, 563 (1951). "[T]he quantity of care required to meet the standard must be determined by the circumstances in which plaintiff and defendant were placed with respect to each other. And whether defendant exercised . . . ordinary care . . . is to be judged by the jury in the light of the attendant facts and circumstances." *Rea v. Simowitz*, 225 N.C. 575, 580, 35 S.E.2d 871, 875, 162 A.L.R. 999 (1945). Recognizing that insurance policies may be complex and difficult for the average insured person to comprehend, this Court has said an insured's education, which included both undergraduate and graduate degrees from universities, and ample experience in business were facts from which a jury could find the insured contributorily negligent in failing to read an insurance policy. *Kirk v. R. Stanford Webb Agency, Inc.*, 75 N.C. App. 148, 151, 330 S.E.2d 262, 264, *disc. rev. denied*, 314 N.C. 541, 335 S.E.2d 18 (1985).

In the instant case the court instructed as follows:

Here, the negligence refers to a party's conduct. And negligence is simply a lack of ordinary care. The law imposes a duty upon every person to use ordinary care to protect himself . . . from injury or damage. A breach of that duty is called negligence, and such a breach occurs when a person or organization acting through an agent fails to use ordinary care to protect itself . . . from injury or damage. Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances. I emphasize that the test to be applied is ordinary care. That is, what a reasonable and prudent person would do under the same or [similar] circumstances. So you should not hold . . . Dr. Kronhaus in this case to a higher test than you would anyone else simply because he may have a medical degree and be a doctor of medicine.

Here the defendants . . . contend that Kron Medical Corporation was negligent as follows: That Al[an] Kronhaus acting on behalf of Kron Medical breached his duty to use ordinary care in that he repeatedly failed to inquire of his broker concerning plain and unambiguous language of premium nonrefundability in the relevant insurance policies which he contends was inconsistent with his understanding that the premium was refundable.

MAINTENANCE EQUIPMENT CO. v. GODLEY BUILDERS

[107 N.C. App. 343 (1992)]

In considering whether . . . the plaintiff Kron Medical Corporation acting through its agent, Dr. Kronhaus, breached the duty of due care in the examination, understanding or inquiry regarding its policies, you may consider [his] age and education and business background, business and professional experience and positions and jobs held and any other factors which you may find reasonable in determining the ability of Dr. Kronhaus acting for Kron Medical Corporation to exercise the duty of due care. Nevertheless, ordinary care is all that is required, that is[,] that degree of care which the ordinary, prudent person would exercise under the same or similar attendant circumstances.

Reading the instruction in its entirety, as we must, *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967), we are unable to find error. Under *Kirk*, Dr. Kronhaus' education and business experience were attendant facts the jury could consider. Nevertheless, the trial court repeatedly emphasized that the standard of care was ordinary care and specifically charged the jury not to hold Dr. Kronhaus to a higher standard simply because he was a physician. We, therefore, conclude the court did not err in instructing the jury as to contributory negligence.

The judgment for defendants notwithstanding the verdict for plaintiff is reversed; the denial of plaintiff's motion for new trial is affirmed.

Judges ARNOLD and WALKER concur.