**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GILBANE BUILDING COMPANY, a
Corporation; APPLIED RETRIEVAL
TECHNOLOGY CORPORATION,
Plaintiffs-Appellees,

and

HOLLAND GLASS COMPANY,
INCORPORATED; METROMONT
MATERIALS; LANDMASTERS, INC.;
B&B CONTRACTING COMPANY,
INCORPORATED; CACI, INCORPORATED
- FEDERAL; PETTIT CONSTRUCTION
COMPANY, INCORPORATED,
Plaintiffs,

No. 93-2448

v.

FEDERAL RESERVE BANK OF
RICHMOND, Charlotte Branch,
Defendant-Appellant,

INTERNATIONAL FIDELITY INSURANCE
COMPANY,
Defendant & Third Party Plaintiff-
Appellee,

and

ELECTRICON, INCORPORATED,
Defendant & Third Party Plaintiff.

APPLIED RETRIEVAL TECHNOLOGY
CORPORATION,
Plaintiff-Defendant & Third Party
Defendant-Appellant,

and

HOLLAND GLASS COMPANY,
INCORPORATED; METROMONT
MATERIALS; LANDMASTERS, INC.;
B&B CONTRACTING COMPANY,
INCORPORATED; CACI, INCORPORATED
- FEDERAL; PETTIT CONSTRUCTION
COMPANY, INCORPORATED;
Plaintiffs,

GILBANE BUILDING COMPANY, a
Corporation;

No. 93-2449

Plaintiff-Third Party Defendant-
Appellee,

v.

FEDERAL RESERVE BANK OF
RICHMOND, Charlotte Branch,
Defendant & Third Party
Defendant-Appellee,

INTERNATIONAL FIDELITY INSURANCE
COMPANY,
Defendant & Third Party Plaintiff-
Appellant,

and

ELECTRICON, INCORPORATED,
Defendant & Third Party Plaintiff.

2

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-90-374-C-C-P, CA-90-274-C-C-P, CA-91-99-C-C-P,
CA-91-237-C-C-P, CA-91-281-C-C-P, CA-91-293-C-C-P,
CA-91-384-C-C-P, CA-90-318-C-C-P)

Argued: January 29, 1996

Decided: April 1, 1996

Before MURNAGHAN, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed in part and reversed in part by published opinion. Judge
Ervin wrote the opinion, in which Judge Murnaghan and Judge Wil-
kins joined.

_____

**COUNSEL**

**ARGUED:** George Verner Hanna, III, MOORE & VAN ALLEN,
Charlotte, North Carolina, for Appellant. Robert Lewis Burchette,
JOHNSTON, TAYLOR, ALLISON & HORD, Charlotte, North Car-
olina, for Appellee Gilbane; Mitchell Allen Stein, STEIN & ASSO-
CIATES, P.C., New York, New York, for Appellee Applied
Retrieval. **ON BRIEF:** Randel E. Phillips, Mary Elizabeth Erwin,
MOORE & VAN ALLEN, Charlotte, North Carolina, for Appellant.
Patrick E. Kelly, Greg C. Ahlum, Gary J. Welch, JOHNSTON, TAY-
LOR, ALLISON & HORD, Charlotte, North Carolina, for Appellee
Gilbane.

_____

**OPINION**

ERVIN, Circuit Judge:

This case arose from construction in Charlotte, North Carolina, of a branch of the Federal Reserve Bank of Richmond ("FRB"). By agreement of the parties, the claims at issue in this appeal were tried initially before a court-appointed special master. The district court awarded damages to FRB against general contractor Gilbane Building Company. Gilbane does not appeal. The district court also awarded damages against FRB in favor of Gilbane, and trebled the entire amount for unfair or deceptive trade practices under North Carolina's Unfair Trade Practices Act ("UTPA"), N.C. Gen. Stat. § 75-1.1 et seq. Some of the trebled damages were to pass through Gilbane to various subcontractors, including Applied Retrieval Technology Corp. ("ART"), but the district court ruled that the trebling would benefit Gilbane only. FRB appeals only the trebling of the award. Finally, the district court awarded damages to FRB against ART and its surety-- International Fidelity Insurance Company ("IFIC").**1** ART appeals that award, and contests the district court's refusal to treble the damages it received from FRB through Gilbane.

We disagree with the district court's decision to treble FRB's liability. But we find no error in its awards to FRB against ART. Thus we reverse the finding of unfair and deceptive trade practices, and affirm on all remaining issues.

I.

Litigation of these disputes began in North Carolina state court, and North Carolina substantive law controls. But the case properly was removed to federal district court under 12 U.S.C. § 632, which establishes federal subject matter jurisdiction over any civil suit in which a Federal Reserve Bank is a party. Appellate jurisdiction is appropriate under 28 U.S.C. § 1291, because the parties' appeals are from final judgments.

_____

**1** The interests of ART and IFIC are equivalent in this appeal, so we hereinafter refer to them collectively as "ART."

4

II.

On October 3, 1986, FRB and Gilbane entered into a contract under which FRB would pay Gilbane an amount greater than $32 million to serve as general contractor and project manager for construction of FRB's Charlotte branch. In 1990, several subcontractors initiated lawsuits against Gilbane and FRB for failing to pay for the subcontractors' work. Gilbane crossclaimed against FRB for withholding payment.

On April 16, 1991, FRB and Gilbane entered into the"Dooley Agreement," which suspended the litigation and appointed contractor R. T. Dooley to judge performance under the contract. To settle disputes not resolved by the Dooley Agreement, Gilbane and FRB moved the district court for appointment of a special master. The court appointed Walter L. Hannah, a North Carolina construction attorney, to hear both the construction disputes between Gilbane and FRB ("the construction cases") and a dispute between FRB, ART, CACI, Inc., and IFIC regarding the project's Automated Storage and Retrieval System ("the retrieval cases"). The parties agreed to be bound by the special master's findings of fact, and that the district court would make all conclusions of law.

During the construction hearings, Gilbane moved the special master to add an unfair or deceptive trade practices claim. After the hearings ended, the district court ruled that the UTPA claim was supported by the special master's findings of fact, and it trebled the damages awarded to Gilbane. FRB moved the court to amend the judgment as unfairly prejudicial and abusive of the court's discretion, arguing that the court should either vacate the treble damages award or submit the issue to the special master to determine whether it was properly tried during the hearings. The court did the latter, and the special master responded that Gilbane had raised the issue properly and that FRB had consented impliedly to trial of the issue by failing to show how it would be prejudiced by amendment of Gilbane's crossclaim. The court denied FRB's motion to amend the judgment, and FRB appeals.

The retrieval cases arose from ART's installation of an automated vault storage and retrieval system. Relying on the special master's

5

report, the district court awarded ART $102,000 from Gilbane, "representing the balance due to ART under its contract." But it held ART liable to FRB, through Gilbane, for a total of $359,842.21: $325,000 for the difference between the actual value of the completed retrieval system and its reasonably expected value under the contract, $6,000 for wiring that failed to meet specifications, and $28,842.21 for "maintenance labor costs" above those normally expected for such a system.

ART appeals the award to FRB, protesting (1) that FRB waived any damages by accepting ART's substantial performance, (2) that the special master violated Fed. R. Civ. P. 53(e)(1) by failing to file with the district court the exhibits introduced at the hearing, (3) that the special master's findings regarding the system's useful life were not supported by the evidence, and (4) that it was not given an opportunity to cross-examine the expert consulted by the special master. Additionally, ART contests the district court's refusal to treble the damages awarded to ART through Gilbane. Like Gilbane, and based on the same acts by FRB, ART moved the district court for leave to amend its pleadings to include a claim for treble damages. Unlike Gilbane, however, ART had not raised its UTPA claim before the special master, and the district court denied its motion. ART contends on appeal that the justification for its claim is not materially different from that for Gilbane's.

III.

A.

1.

FRB contends that the district court abused its discretion by allowing a post-trial amendment of Gilbane's pleadings to include an unfair or deceptive trade practices claim. FRB acknowledges that Fed. R. Civ. P. 15(b) allows such an amendment when the issue actually has been tried by the consent of the parties. It argues, however, that the special master's findings do not support the conclusion that FRB impliedly consented to trial of the UTPA issue. Gilbane responds that FRB had sufficient notice of the UTPA claim and the opportunity to present evidence to rebut the claim, and that FRB neither claimed nor

6

proved that it would be prejudiced by the amendment until after the district court entered its judgment.

FRB and Gilbane agree that whether the district court could consider the UTPA issue is controlled by Rule 15(b), which provides:

> (b) Amendments to Conform to the Evidence.  When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Despite the parties' agreement, this is not a Rule 15(b) situation. It is governed instead by Rule 54(c), which authorizes recovery under any theory supported by the facts proven at trial: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

The distinction between Rule 15(b) and Rule 54(c) is grounded in the fundamental structure of the Federal Rules' pleading system. The introduction of the Rules in 1938 eliminated the murky code-pleading requirement that a claimant plead ultimate facts and avoid pleading evidence and conclusions of law. See 5 Charles A. Wright et al., Federal Practice and Procedure § 1218, at 178-80 (2d ed. 1990). Code pleading needlessly emphasized the form of a complaint over its substance, as an excerpt from a 1929 treatise illustrates:

7

> Every attempt to combine fact and law, to give the facts a legal coloring and aspect, to present them in their legal bearing upon the issues rather than in their actual naked simplicity, is so far forth [sic] an averment of law instead of fact, and is a direct violation of the principle upon which the codes have constructed their system of pleading.

John N. Pomeroy, Code Remedies § 423, at 640 (5th ed. 1929), quoted in 5 Wright, et al. § 1218 at 179 n.1. The "notice-pleading" scheme of the Rules has eliminated code pleading's formalistic, purely factual approach. Courts now deem a claim sufficient if it contains a "`short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Rule 8(a)(2)). Nevertheless, despite the more forgiving pleading standards, the essence of a claim remains its factual elements. See 5 Wright, et al. § 1215 at 145 ("The rules do contemplate a statement of circumstances, occurrences, and events in support of the claim being presented."). Thus, under Rule 8(a)(2), a"statement of the claim" is sufficient "so long as a plaintiff colorably states facts which, if proven, would entitle him to relief," Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982), and the claimant "need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it on any theory." New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24-25 (4th Cir. 1963), cert. denied, 376 U.S. 963 (1964).

Rule 15(b) is an exception to the general rules of pleading. As its heading suggests, it is designed to allow amendment of a pleading when the facts proven at trial differ from those alleged in the complaint, and thus support a cause of action that the claimant did not plead. Because notice to the defendant of the allegations to be proven is essential to sustaining a cause of action, Rule 15(b) applies only when the defendant has consented to trial of the non-pled factual issues and will not be prejudiced by amendment of the pleadings to include them.

Rule 54(c), in contrast, is not an exception to the general rules. It is, instead, a clarification of the fundamental point that we noted in New Amsterdam Casualty--that the relief to which a claimant is enti-

8

tled is not limited to the relief it requested in its original demand for judgment. 323 F.2d at 24-25. Thus Rule 54(c) contains no express requirements of consent or lack of prejudice,[2] but commands that the trial court "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c) (emphasis added).

Gilbane does not contend, as Rule 15(b) requires, that its evidence at the hearing proved facts not encompassed by its initial pleadings. Nor does FRB question whether the facts Gilbane proved were within the scope of its original allegations. Instead, to show that it did not consent, FRB argues the opposite: "The Federal Reserve did not object to any of the evidence presented by Gilbane during the Hearings because this evidence related to issues within Gilbane's pleadings." It follows that the issue framed by the parties on appeal is not whether the evidence differed from Gilbane's initial allegations, but whether the allegations properly pled and proven support a theory and type of relief not specified in Gilbane's demand for judgment. That issue is controlled by Rule 54(c).

2.

We previously addressed a plaintiff's post-verdict request for UTPA damages in Atlantic Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712 (4th Cir.), cert. denied, 464 U.S. 848 (1983). We affirmed the district court's denial of the motion, holding that alternative relief under Rule 54(c) is unavailable when granting it would be unjust. Id. at 716 (citing United States v. Marin, 651 F.2d 24, 31 (1st Cir. 1981)); accord Albemarle Paper Co., 422 U.S. at 424 ("[A] party may not be `entitled' to [Rule 54(c)] relief if its conduct of the cause has improperly and substantially prejudiced the other party."). Trebling a defendant's exposure after trial, we determined, would be unfairly prejudicial:

_____

[2] Case law has carved out an exception where alternative relief would be unfairly prejudicial. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975); see also infra part III.A.2. On its face, however, Rule 54(c) is compulsory.

> [A] substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c). We believe that this exception to the Rule is applicable in the present case.
>
> [The plaintiff]'s complaint gave no warning to[the defendant] that successful prosecution of the action could result in an award to [the plaintiff] of three times[its] actual damages. This default denied [the defendant] and its counsel the opportunity to make a realistic appraisal of the case, so that their settlement and litigation strategy could be based on knowledge and not speculation.

Id. at 716-17 (quotation marks and citations omitted).

The instant case, like Atlantic Purchasers, involves a post-trial motion for treble damages under the UTPA. But it is factually distinguishable. The Atlantic Purchasers plaintiff moved for UTPA damages only after the jury already had rendered its verdict. 705 F.2d at 714-15. Gilbane, in contrast, moved to add its UTPA claim at the beginning of the construction hearings, so the district court ruled that FRB was not unfairly prejudiced. The district court's ruling is reviewable only for abuse of discretion, Albemarle Paper Co., 422 U.S. at 424; Atlantic Purchasers, 705 F.2d at 717, and the district court did not abuse its discretion by determining that Gilbane's motion at the beginning of the hearing provided adequate warning to FRB. Accordingly, Gilbane is entitled to any UTPA relief supported by the special master's findings of fact.

B.

Whether facts support a cause of action involves application of law to the facts. South Carolina State Ports Auth. v. Lykes, 67 F.3d 59, 61 (4th Cir. 1995). Thus we review de novo whether the special master's factual conclusions satisfy the elements of the UTPA.

1.

To recover under the UTPA, a plaintiff must prove (1) that the defendant engaged in conduct that was in or affecting commerce, (2)

10

that the conduct was unfair or "had the capacity or tendency to deceive," and (3) "that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Pearce v. American Defender Life Ins. Co., 343 S.E.2d 174, 179-80 (N.C. 1986). Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court. Hardy v. Toler, 218 S.E.2d 342, 346-47 (1975); accord United Laboratories, Inc. v. Kuykendall, 370 S.E.2d 375, 389 (N.C. 1988) ("[I]t is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice."); see also James McGee Phillips, Jr., Note, Consumer Protection--Hardy v. Toler: Applying the North Carolina Deceptive Trade Practices Legislation--What Role for the Jury?, 54 N.C. L. Rev. 963, passim (1976) (discussing Hardy's resolution of the issue). In this case the factfinder was a special master instead of a jury, but the same division of responsibility applies.

The standard of review of a special master's findings, however, is different from the formidable standard applied to jury verdicts. A special master's factual conclusions normally are reviewable for clear error. Fed. R. Civ. P. 53(e)(2); Henry A. Knott Co. v. Chesapeake & Potomac Telephone Co., 772 F.2d 78, 85 n.11 (4th Cir. 1985). But they are unreviewable if the parties so stipulate, Rule 53(e)(4), as they did in this case. Because the special master's factual findings are conclusive, and because Rule 54(c) applies only where the existing findings of fact are entirely sufficient for the court to award alternative relief, we can affirm the district court's trebling of damages only to the degree that the special master's report includes all of the findings necessary for a UTPA award: (1) conduct or statements that this court determines to have been unfair or deceptive within the meaning of the UTPA, (2) damages to Gilbane as a proximate result of the conduct or statements, and (3) the dollar amounts of the damages.

What constitutes an unfair or deceptive trade practice is a somewhat nebulous concept. North Carolina courts base their determinations on the circumstances of each case, Goodrich v. Rice, 331 S.E.2d 195, 198 (N.C. App. 1985), acknowledging that no precise definition is possible, Harrington Mfg. Co. v. Powell Mfg. Co., 248 S.E.2d 739, 746 (N.C. App. 1978), disc. rev. denied, 251 S.E.2d 469 (N.C. 1979). The courts' opinions do offer guidance, however. In Harrington, the

11

North Carolina Court of Appeals described unfairness under the UTPA as

> conduct "which a court of equity would consider unfair." Extract Co. v. Ray, 20 S.E.2d 59, 61 (N.C. 1942). Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

Id. at 744. To be actionable under the statute, conduct must be "immoral, unethical, oppressive, unscrupulous, or substantially injurious . . . ." Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. App.), disc. rev. denied, 421 S.E.2d 350 (N.C. 1992) (internal quotation and citation omitted). Acts are deceptive when they "possess[ ] the tendency or capacity to mislead, or create[ ] the likelihood of deception." Chastain v. Wall, 337 S.E.2d 150, 154 (N.C. App. 1985), disc. rev. denied, 342 S.E.2d 891 (N.C. 1986), quoted in Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 534-35 (4th Cir. 1989). Either unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive. Rucker v. Huffman, 392 S.E.2d 419, 421 (N.C. App. 1990).

In practice, courts have applied the statute liberally. See Robert G. Byrd, Misrepresentation in North Carolina, 70 N.C. L. Rev. 323, 372 (1992). Fraud is covered, of course, Hardy v. Toler, 218 S.E.2d 342, 346 (N.C. 1975), and negligent misrepresentation also has been deemed sufficient. Forbes v. Par Ten Group, Inc. , 394 S.E.2d 643, 651 (N.C. App. 1990), disc. rev. denied, 402 S.E.2d 824 (N.C. 1991). Even failure to disclose information has been considered deceptive when tantamount to misrepresentation. Kron Medical Corp. v. Collier Cobb & Assocs., 420 S.E.2d 192, 196 (N.C. App.), disc. rev. denied, 424 S.E.2d 910 (N.C. 1992); accord Leake v. Sunbelt Ltd., 377 S.E.2d 285, 288 (N.C. App.), disc. rev. denied, 381 S.E.2d 774 (N.C. 1989). A simple breach of contract is not unfair or deceptive, however, absent "substantial aggravating circumstances." Branch Banking & Trust Co., 418 S.E.2d at 700 (quoting Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)). And a broken promise is

12

unfair or deceptive only if the promisor had no intent to perform when he made the promise. See Kent v. Humphries, 275 S.E.2d 176, 182-83 (N.C. App.), modified, 281 S.E.2d 43 (N.C. 1981); Overstreet v. Brookland, Inc., 279 S.E.2d 1, 6 (N.C. App. 1981).

What constitutes proximate cause between a deceptive act and a plaintiff's damages remains ambiguous. Dicta indicates that reliance is unnecessary, Rucker v. Huffman, 392 S.E.2d 419, 421-22 (N.C. App. 1990), but no cases have permitted recovery without reliance. Byrd, supra, at 367. Nevertheless, it is well-established that when the plaintiff's reliance is the causal link between the violative conduct and the damages, the reliance need not be reasonable:

> If unfair trade practitioners could escape liability upon showing that their victims were careless, gullible, or otherwise inattentive to their own interests, the Act would soon be a dead letter.

Winston Realty Co. v. G.H.G., Inc., 320 S.E.2d 286, 290 (N.C. App. 1984), aff'd, 331 S.E.2d 677 (N.C. 1985). But cf. Opsahl v. Pinehurst, Inc., 344 S.E.2d 68, 77 (N.C. App. 1986) (holding that in the construction context, where completion dates are subject to factors beyond the control of the parties, a misrepresentation that projected completion dates are firm is not actionable under the UTPA), disc. rev. dismissed as improvidently allowed, 353 S.E.2d 400 (N.C. 1987); accord Bolton Corp. v. T.A. Loving Co., 380 S.E.2d 796, 809 (N.C. App.), disc. rev. denied, 385 S.E.2d 496 (N.C. 1989).

2.

The special master did not believe that his findings supported a UTPA claim. That is an issue of law, however, so we review it de novo. To do so, we look directly to the special master's binding factual findings to determine whether they establish the elements required for UTPA relief.

Gilbane points to findings of several acts that it believes constituted unfair or deceptive trade practices by FRB. They include: (1) ordering extra work when it lacked authority and ability to pay, (2) represent-

13

ing to Gilbane that it had "unlimited" authority to pay for the work, (3) intentionally delaying payment, (4) arbitrarily reducing Gilbane's compensation without regard to what actually was owed, and (5) violating the contract by assuming the role of Project Architect. Motion to Amend or Modify the Special Master's Findings of Fact and Conclusions of Law at 11-12. Except for the representation of unlimited authority, the acts were mere breaches of contract. In each case FRB failed to satisfy obligations to which it had agreed, but the special master's findings do not indicate either that FRB did not intend to perform when it made the agreements or that there were other substantial aggravating circumstances. The special master's opinion, while entitled to no deference, is instructive on the issue of substantial aggravating circumstances:

> The Special Master, in considering the Findings of Fact to be submitted to the Court, did not make findings which he considers as rising to the level of those which would be unfair or deceptive trade practices. . . . [O]nly one individual with FRB guided or committed the acts which Gilbane now contends entitle it to damages for unfair and deceptive trade practices. It was and is the opinion of this court that this individual was "over his head" in the administration of the building contract and in attempting to make decisions which should have been made only after receiving instructions in consultation with more experienced management.

Special Master Report--Clarifications at 13-14.

The misrepresentation of authority to pay did constitute an unfair or deceptive trade practice. FRB delayed processing change orders until the work on them had been completed, and then refused to pay the costs submitted by Gilbane. In response to this ongoing problem,

> Gilbane asked the FRB to identify the FRB representative with authority to approve change orders and to state the dollar limitation of that approval authority. On or about May 4, 1987, the FRB representative, Powell, [inaccurately] confirmed that he had "unlimited" authority to approve change orders. Gilbane relied upon FRB's representation and continued to work.

14

Special Master's Findings of Fact and Conclusions of Law--Construction at 23. But the report does not differentiate between work that was done as a proximate result of Powell's misrepresentation and work that already had been done or would have been done anyway.

Rule 54(c) allows alternative relief only where <u>all</u> factual conclusions necessary for the relief sought have been found by the trier of fact. <u>See Cioffe v. Morris</u>, 676 F.2d 539, 541 (11th Cir. 1982) ("Rule 54(c) creates no entitlement to relief based on issues not squarely presented and litigated at trial."). It may be, and in fact is likely, that Gilbane worked on some change orders as a proximate result of Powell's misrepresentation. But whether that is true, and if so what damages were incurred, was not included in the special master's findings. Thus Gilbane is not entitled to alternative relief under Rule 54(c).

IV.

A.

ART contends that the special master erred by awarding damages against it for obvious defects in the retrieval system. It argues that FRB waived any such damages by accepting substantial performance in the system's installation. As FRB points out, however, that it occupied the building and used the system does not constitute acceptance of the system as conforming to the contract. <u>See Kandalis v. Paul Pet Constr. Co.</u>, 123 A.2d 345, 347 (Md. 1956) ("[t]he mere fact that the purchasers take possession when the building is completed does not necessarily constitute a waiver of defects or an acceptance of the contractor's workmanship."); <u>Hall v. McLeod</u>, 62 S.E.2d 42, 46 (Va. 1950); Robert F. Cushman & David A. Carpenter, <u>Proving and Pricing Construction Claims</u> 388-89 (1990). The special master found as a matter of fact that "FRB has refused to acknowledge the functionality and reliability of the automated storage and retrieval system."

ART challenges the assumption that acceptance is an issue of fact, and tries to convert it into a legal question:

> [T]he Court and the Special Master erred in not determining the scope of the performance of the parties, the consequence

15

of the subsequent Agreement in May of 1990, the consequence of the start of the Warranty Periods, and the consequence of the completion of the Warranty Periods. Such determinations involve issues of law, and were simply not considered by the District Court, thus rendering the findings and conclusion erroneous as a matter of law.

ART is correct that those determinations involve issues of law, but the determinations are important only for their probity on the factual question of whether FRB accepted ART's performance. Because the parties agreed that the special master's factual findings are final, we cannot review his conclusion that FRB did not accept the retrieval system as conforming to the contract.

B.

ART also complains that the Special Master did not file with the District Court the exhibits he used in the hearings:

> The judgment must be reversed, and the case remanded, because the Special Master failed to file the original exhibits, as required by Fed. R. Civ. P. 53(e)(1), thereby preventing the district court from reviewing the Special Master's determinations on mixed questions of fact and law for abuses of discretion.

ART is correct that Rule 53(e)(1) requires filing with the district court of evidence and exhibits. But that requirement was designed to complement Rule 53(e)(2)'s default standard of review for special masters' findings of fact--clear error. In this case, the parties agreed that the special master's findings of fact would not be subject to review for clear error, but would be final.

ART suggests that the parties' agreement encompassed mixed questions of law and fact, and that we should review the district court's findings on such questions for abuse of discretion. But we do not review mixed questions for abuse of discretion. We review them under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and exam-

16

ining <u>de novo</u> the legal conclusions derived from those facts. <u>See</u> <u>United States v. Han</u>, 74 F.3d 537, 540 & n.1 (4th Cir. 1996). In this case, therefore, we accept the special master's findings of fact as final and review the conclusions based on those facts <u>de novo</u>.

The exhibits are relevant only to factual portions of the inquiry-- portions that were conclusively decided by the special master. Filing the exhibits would serve no purpose. Moreover, the exhibits constitute only a fraction of the evidence that was before the special master. The bulk of the evidence was testimony, but the parties agreed that the hearings would not be recorded or transcribed. A review of the exhib- its without the testimony would be incomplete and inconsistent with the parties' agreement. Thus the special master's failure to file the exhibits with the district court did not violate Rule 53(e)(1).

C.

ART argues next that the evidence did not support the special mas- ter's findings regarding the useful life of the retrieval system:

> [T]he exhibits presented to the Special Master show that his finding that the Vault Retrieval System should have had a useful life of 15 years, but only had a useful life of 10 years, was not supported by a sufficient quantum of evidence, and his calculation of damages is erroneous as a matter of law.

The sufficiency of the evidence is entirely unreviewable, because the parties agreed that the special master's factual findings are final. The calculation of damages argument is based on objections to the factual findings from which the calculations were made, so it also is an improper subject for review.

D.

ART also contends that it was denied the opportunity to cross- examine the expert consulted by the special master, in violation of Fed. R. Evid. 706(a). It objects to the special master's adoption of the expert's opinion in the special master's findings regarding the useful life of the retrieval system. Rule 706(a) provides:

17

> The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. . . . A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

That ART never asked to cross-examine the expert during the special master's hearings is irrelevant, it argues, because it entered its request "at the earliest possible time, i.e., immediately upon first receipt of the Expert's Findings."

ART agreed to the informal procedures used in the special master proceedings. It knew that the expert's opinions would influence the special master's findings, and that those findings would be conclusive. Had it so requested, it would have been entitled to review the expert's findings and cross-examine him before the special master's report was filed. But it did not. We will not construe Rule 706(a) to allow a party to undo the informal procedures to which it agreed simply because it is dissatisfied with the result.

E.

ART's final argument is that it should have been permitted to amend its pleadings to include a UTPA claim. Any UTPA damages awarded to Gilbane that involve the retrieval system, ART contends, should pass through Gilbane to ART, which "stands in the shoes of its general contractor." Because we have determined that Gilbane is entitled to no award of treble damages, supra part III.B.2, there is nothing to pass through to ART. Thus we consider neither the timeliness of ART's motion nor the merits of whether pass-through treble damages would be appropriate.

V.

The special master's findings of fact are insufficient to support Gilbane's claim of unfair or deceptive trade practices. Thus Gilbane is

18

not entitled to treble damages under the UTPA. ART's agreement to the finality of the special master's factual findings bars its contentions that FRB waived its claims for defects in the retrieval system, that the special master should have filed his exhibits with the district court, and that there was insufficient evidence to support the special master's findings regarding the useful life of the system. ART's objection that it had no opportunity to cross-examine the expert is precluded by its agreement to the informal procedures used by the special master. Finally, we do not reach the merits of ART's treble damages claim because it depends on a UTPA award to Gilbane. Accordingly, we reverse the district court's award of treble damages to Gilbane, and affirm its resolution of all remaining issues.

AFFIRMED IN PART AND REVERSED IN PART

19