**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PINKLEY, INCORPORATED, t/a Bradley
Books,
<u>Plaintiff-Appellee,</u>

v.

CITY OF FREDERICK, MARYLAND, a Body
Politic,
<u>Defendant-Appellant,</u>

and

ROBERT A. SERVACEK, Individually and
in his official capacity as Detective in
Frederick City Police Department and
City of Frederick, Maryland; RICHARD
J. ASHTON, Major, Individually and in
his official capacity as Chief,
Frederick City Police and Agent,

Servant, Employee and Policymaker
of City of Frederick, Maryland; THE
MAYOR AND BOARD OF ALDERMAN OF
FREDERICK, MARYLAND, CONSTITUTING
AND ACTING AS THE CITY OF FREDERICK
MARYLAND, a Body Politic; DAVID S.
GEARINGER, Officer, Individually and
in his official capacity as agent of
Frederick City, Maryland; JOHN
LAMMERS, Officer, Individually and in
his official capacity as agent of
Frederick City, Maryland; SHAWN
MARTYAK, Officer, Individually and in
her official capacity as agent of
Frederick City, Maryland,
<u>Defendants.</u>

No. 96-1447

PINKLEY, INCORPORATED, t/a Bradley
Books,
Plaintiff-Appellant,

v.

CITY OF FREDERICK, MARYLAND, a Body
Politic; ROBERT A. SERVACEK,
Individually and in his official
capacity as Detective in Frederick
City Police Department and City of
Frederick, Maryland; RICHARD J.
ASHTON, Major, Individually and in
his official capacity as Chief,
Frederick City Policy and Agent,
Servant, Employee, and Policy maker
of City of Frederick, Maryland; DAVID
S. GEARINGER, Officer, Individually

and in his official capacity as agent of                    No. 96-1448
Frederick City, Maryland; JOHN
LAMMERS, Officer, Individually and in
his official capacity as agent of
Frederick City, Maryland,
Defendants-Appellees,

and

THE MAYOR AND BOARD  OF
ALDERMAN OF FREDERICK, MARYLAND,
CONSTITUTING AND ACTING AS  THE
CITY OF FREDERICK MARYLAND, a Body
Politic; SHAWN MARTYAK, Officer,
Individually and in her official
capacity as agent of Frederick City,
Maryland,
Defendants.

2

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Edward S. Northrop, Senior District Judge.
(CA-93-397-N)

Argued: June 3, 1997

Decided: August 31, 1999

Before WIDENER and WILLIAMS, Circuit Judges,
and PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part and vacated and remanded in part by published opinion. Judge Widener wrote the opinion, in which Judge Williams and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** Howard J. Schulman, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellant. William Edward Seekford, Towson, Maryland, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

On February 7, 1990 police officers of the Frederick, Maryland Police Department executed a search warrant at Pinkley, Inc.'s store known as Bradley Books, an adult bookstore. They confiscated allegedly obscene press and speech materials and relevant audio-visual devices and temporarily closed down the establishment.

Pursuant to 42 U.S.C. § 1983 Pinkley brought a three-count complaint in the United States District Court for the District of Maryland

alleging that the seizure had deprived Pinkley of its constitutional rights under the First, Fourth, and Fourteenth Amendments, and had caused a "loss of property and profit" through "wrongful unconstitutional conduct". The district court found that Pinkley's constitutional rights were not violated by the seizure, but entered judgment against the City for the stipulated value of the property, $20,775.41. The parties appeal that decision.[1] We vacate the judgment for conversion against the city and affirm the district court's denial of Pinkley's constitutional claims.

I. Background

On September 19, 1989 Terri Heger, a resident of Frederick, Maryland, filed a complaint with the City of Frederick Police Department alleging Bradley Books was selling obscene materials. The State's Attorney for Frederick authorized an investigation under the auspices of Corporal Servacek, a detective in the Department's Criminal Investigation Division. Sometime around December 26, 1989 Detective David S. Gearinger began undercover operations at the bookstore.

Based on that investigation, by February 1, 1990 Corporal Servacek had drafted an application and affidavit for a search warrant of Bradley Books, which averred that there was probable cause to believe that Pinkley was displaying and distributing obscene materials, primarily magazines and videos, in violation of the Maryland Criminal Code. The application, fifteen pages in length, described the investigation and the adult nature of the materials and activities at Bradley Books. Both Police Chief Ashton and State's Attorney Dorsey reviewed the application, and on February 5, 1990 Corporal Servacek presented the application to a judge of the District Court of Maryland for Frederick County. The judge reviewed the warrant application and issued a search warrant.

_____

[1] Pinkley, Inc. named as defendants the City of Frederick, Maryland and several city officials. Although only defendant City of Frederick had occasion to appeal the money judgment against the City, Pinkley's notice of cross-appeal of the constitutional claims names as the cross-appellees the "City of Frederick; Robert A. Servacek; Richard Ashton; David S. Gearinger; and John Lammers." The four named individuals were members of the Frederick Police Department.

4

Corporal Servacek executed the warrant on February 7, 1990 with a search and seizure team of the Frederick City Police Department, which included defendant Officer Lammers. It was Corporal Servacek who determined which materials were to be seized by assessing whether each item fell within the definition of obscene as set forth in the warrant application. The other officers assisted in the removal of the materials, but did not participate in the selection of items. In conjunction with the seizure, Corporal Servacek prepared an inventory sheet and a property record form for the police department, itemizing the property seized. The store was closed by the officers, for they arrested the sole employee present at the time, bookstore manager Paul G. Sobus.

That same day Sobus was charged with violating 27 Md. Ann. Code § 416D (knowingly displaying for advertising purposes pictures, photographs, drawings, etc. depicting sadomasochistic abuse, sexual conduct and sexual excitement), 27 Md. Ann. Code § 418 (knowingly exhibiting, distributing and offering to distribute obscene matter), and 27 Md. Ann. Code § 421 (promoting the sale and distribution of obscene material). To these charges was added, on February 21, 1990, the charge of maintaining a bawdy house in violation of 27 Md. Ann. Code § 15(a).

On February 9, 1990 Bradley Books through its counsel sent a letter to Police Chief Ashton demanding the return of the seized materials and equipment. The letter requested an adversary hearing and advised plaintiff would "seek redress" if the materials were not returned by February 12, 1990. Chief Ashton relayed the letter to the State's Attorney's Office. Mayor Paul Gordon received an identical letter, which he forwarded to Chief Ashton. Plaintiff's counsel did not seek any formal hearing in a court, and no such hearing was ever scheduled or held.

On June 18, 1990 Sobus pleaded guilty both to violating § 418 -- knowingly exhibiting, distributing and offering to distribute obscene matter -- and to maintaining a bawdy house. During that plea Sobus and his counsel agreed with the State's proffer that the following would have been proven by the State:

> Materials that were taken on that day included magazines and books and video tapes which portrayed sexual conduct

5

in what would be seen as a patently offensive manner to the average person buying (sic) contemporary community standards. In addition Your Honor it would be found that in viewing these materials that they appeal to the prurient interest in sex and that they do not in any way serve a serious literary, artistic, political, or scientific purpose.

Although no obscenity charges were filed against Pinkley or Bradley Books, as the district court noted "[d]uring his plea, Mr. Sobus acknowledged that Bradley Books was a bawdy house where men engaged in sodomy and unnatural sexual acts in violation of State criminal laws." That appeared to be the end of the matter as far as the City was concerned. No other charges were filed against Pinkley connected with the bookstore, and within a few days it had reopened. The magazines, videos, VCRs and other materials were retained in the police department's evidence room.

At all relevant times the Frederick Police Department's practice regarding evidence was to provide notice to property owners of seized property after the conclusion of a case or investigation. The notice served to alert the owners that the police department had possession of the property, and that if the property was not claimed within six months of receipt of the notice, the department would consider the property to be unclaimed and subject to disposal. Additionally, subject to the approval of the police chief, the department allowed its officers to acquire unclaimed property.

In late 1990 Sergeant Steven Tuel was assigned the duty of Identification Section assistant, pursuant to which he was to assist Lieutenant Alice Moore in cataloging and purging the various articles of evidence and property which had accumulated over time in the department's custody. In the process of cataloging he encountered the evidence seized from Bradley Books, which included magazines, books, videotapes, video players, televisions, and like equipment. Sgt. Tuel consulted with Cpl. Servacek regarding the status of the case. In turn, Cpl. Servacek asked the State's Attorney Shelly Barrett, who had assisted in the prosecution of Sobus, whether the materials could be disposed. Upon receiving no response, Sgt. Tuel advised Lt. Moore that he had not received an answer. Subsequently, Lt. Moore prompted Chief Ashton to make a similar inquiry to State's Attorney

Dorsey, which met with a like result. A month later the matter again went up the chain of command in the police department. Finally, after about a year, Sgt. Tuel visited the Office of the State's Attorney and spoke with Assistant State's Attorney Don Grossnickle regarding the disposal of the Bradley Books property. Shortly thereafter, State's Attorney Dorsey called Sgt. Tuel and advised him that he could dispose of the evidence.

On October 14, 1991 Corporal Servacek sent a memorandum to Chief Ashton requesting permission to take possession for his personal use some of the Bradley Books property that had not been claimed, pursuant to the department's policy. Both officers believed that the property, unclaimed some 16 months after Sobus's guilty plea, had been abandoned. However, the police department had not notified Bradley Books that it could retrieve any of its property.

Sometime thereafter, Cpl. Servacek claimed a number of television sets and video players for his personal use. He believed that they were in poor condition, and that he was unable to make repairs to make them operational. The police department also retained one video player and television to use for showing training videos. Ultimately, at an uncertain date, Sgt. Tuel on his own initiative decided to dispose of the remaining books and films at the city landfill. He mistakenly believed that the materials had been declared contraband in the course of Sobus's guilty plea. Defendants were not aware of his action at the time.

II. Procedure

On February 5, 1993 Pinkley, Inc. filed a three-count complaint against the City of Frederick and the various officials named above. The complaint alleged jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), and 42 U.S.C. §§ 1983 and 1988 for alleged violations of Pinkley's rights under the First, Fourth, and Fourteenth Amendments. Following a general statement, the three counts were captioned as follows.

COUNT ONE
(Wrongful unconstitutional prior restraint and abridgment of

7

plaintiff's <u>First</u> and <u>Fourteenth Amendment</u> civil rights of dissemination by defendants' seizure) . . . .

<u>COUNT TWO</u>
(Wrongful unreasonable search and seizure by warrant and abridgment of plaintiff's <u>Fourth</u> and <u>Fourteenth</u> Amendment rights with respect to <u>First Amendment</u> materials) . . . .

<u>COUNT THREE</u>
(Loss of Property, profit, etc.) . . . .

Count Three incorporated the allegations of all the preceding paragraphs by reference, and then stated that the defendants

> have seized and taken away plaintiff's personal property and equipment and depriving it of the possession and value thereof without lawful authority or reasonable compensation and have refused to return, replace or provide adequate compensation for the same. Further that the plaintiff has been wrongfully deprived of the foreseeable profit from such property through exhibition, sale and rental.

The next paragraph stated "[t]hat such wrongful unconstitutional conduct engaged in by defendants was done knowingly, intentionally and maliciously."

Following a two day bench trial the district court entered a final judgment against the plaintiff and in favor of all the defendants as to Counts One and Two of the Complaint. On Count Three, the court entered judgment against the City of Frederick only (and not the individual defendants) in an amount stipulated by the parties, $20,775.41. On January 26, 1996 the City of Frederick filed a Motion to Alter or Amend the Judgment, and Pinkley did the same on February 5, 1996. The district court denied both motions in orders of March 5, 1996. The plaintiff filed a supplementary Motion to Alter or Amend and/or Grant Relief from the March 5 order, which was denied March 11. The City has appealed and the plaintiff has cross-appealed.

8

III. <u>Conversion Claim</u>

The City of Frederick appeals the district court's conclusion that under Count Three the plaintiff could recover under a state cause of action for conversion, and that the court had supplemental jurisdiction over that claim. Following the trial, the district court's initial order briefly stated that the court had supplemental jurisdiction over the claim under 28 U.S.C. § 1367(a) and that judgment on Count Three would be entered against the City of Frederick for the fair market value of the property at the time of seizure because the defendants "do not dispute that they failed to give proper notice to Plaintiff concerning the need to claim the seized Bradley Books materials in contravention of . . . [city and police policy]. As such, defendants wrongfully deprived the Plaintiff of this property." A principal difficulty is that § 1367(a) or supplemental jurisdiction had not been mentioned in the case until after the trial.[2]

In response to the City's Motion to Alter or Amend the Judgment the court in its order of March 4, 1996 explained its initial ruling on Count Three. The court explained that although the plaintiffs had not included the terms "supplemental jurisdiction," "negligence," or "conversion" in the complaint, and that even though the amended pretrial order did not specify a claim for conversion, the court had presumed in its initial Findings of Fact and Conclusions of Law "the parties' implicit understanding that a claim for conversion remained at issue during trial." The court acknowledged in a footnote that the parties "did not expressly address this issue [of conversion]" but noted that the defendants twice in their arguments insisted that the plaintiff's complaint was really a conversion claim.

Our review of the district court's opinion necessarily begins with the basic premises of federal jurisdiction. Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction. See <u>Lehigh Mining & Manufacturing. Co. v. Kelly</u>, 160 U.S. 337, 327 (1895). Thus the facts providing

_____

**2** It is true that the plaintiff's post-trial brief refers to Count Three as a pendent count but describes the loss as due to unconstitutional seizure, conversion and destruction of the property without just compensation. It also describes Count III as one of substantive due process.

9

the court jurisdiction must be affirmatively alleged in the complaint. McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) (holding "the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleadings the facts essential to show jurisdiction"); Dracos v. Hellenic Lines Ltd., 762 F.2d 348, 350 (4th Cir.) ("plaintiffs must affirmatively plead the jurisdiction of the court"), cert. denied, 474 U.S. 945 (1985). To this end Federal Rule of Civil Procedure 8(a)(1) requires that pleadings setting forth a claim for relief provide "a short plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it." Fed. R. Civ. P. 8(a)(1). See 13 Wright, Miller & Kane, Federal Practice and Procedure, § 3521 (1984).

This said, there is some authority that in the absence of an affirmative pleading of a jurisdictional basis a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded. "The pleading can either refer to the appropriate jurisdictional statute or contain factual assertions that, if proved, establish jurisdiction." 2 Moore's Federal Practice § 8.03[3] (3rd ed. 1997). Accordingly, the only way that the district court could have a basis to invoke its supplemental jurisdiction and provide relief for the plaintiffs under an unpleaded state law conversion claim is if the plaintiff had actually tried that claim before the court.

The district court found that Fed. R. Civ. P. 15(b) governed the question of whether the issue of conversion, through the evidence adduced at trial, had been put before the court by the parties.[3] The court relied on Rule 15 because "[t]he purpose of Rule 15(b) is to

_____

[3] Rule 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to amend does not affect the result of the trial of these issues.

Fed. R. Civ. P. 15(b).

10

allow an amendment of the pleadings to bring them in line with the actual issues upon which the case was tried."

We do not agree with the district court's reliance on Rule 15(b). Federal Rule of Civil Procedure 54(c), which provides in pertinent part that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings", more properly governs the situation at hand. Fed. R. Civ. P. 54(c).

Gilbane Building Company v. Federal Reserve Bank of Richmond, 80 F.3d 895, 901 (4th Cir. 1996), controls that aspect of this case. In Gilbane we explained that amendment pursuant to Rule 15(b) requires that the "evidence at the hearing proved facts not encompassed by its initial pleadings." 80 F.3d at 901. But when the question is "whether the allegations properly pled and proven support a theory and type of relief not specified in [the plaintiff's] demand for judgment . . . [t]hat issue is controlled by Rule 54(c)." Gilbane, 80 F.3d at 901. As in Gilbane, the facts proven at trial here were properly pled and proven, but the demand for judgment for conversion now made was not fairly specified for trial under the supplemental jurisdiction of the district court.

Rule 54(c) does not support the district court's implicit decision that a state-law conversion claim had been de facto tried by the parties. According to the precedents applying Rule 54(c), alternative relief is not permitted where it would be unfairly prejudicial. Gilbane, 80 F.3d at 901 (relying on Albemarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975)). Moreover, as the First Circuit stated under similar circumstances "the rule permits relief predicated on a particular theory `only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings.'" Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1173 (1st Cir. 1995) (quoting Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 930, 923-24 (3rd Cir. 1984)). Here, where the plaintiff failed to plead a conversion theory, and where the surprise ruling patently prejudiced the defendants, as we set forth below, Rule 54(c) does not support the district court's decision to invoke supplemental jurisdiction on its own initiative.

11

We now explain why Rule 54(c) should control and Rule 15(b) is an unsatisfactory basis for judgment for the plaintiff on an unpleaded conversion theory of recovery.

We review the trial court's determination under Rule 15(b) for abuse of discretion. Elmore v. Corcoran, 913 F.2d 170, 172 (4th Cir. 1990). It is well established that Rule 15(b) applies only if two requirements are met. "Because notice to the defendant of the allegations to be proven is essential to sustaining a cause of action, Rule 15(b) applies only when the defendant has consented to trial of the non-pled factual issues and will not be prejudiced by amendment of the pleadings to include them." Gilbane, 80 F.3d at 901.

We are of opinion that the district court abused its discretion by deeming the complaint amended under Rule 15(b) to include a conversion claim. In Quillen v. International Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986), we recognized the restraint on Rule 15(b) that "a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." The instant case presents the same situation which Quillen warned against -- appellate relief because the evidence offered to support a properly pleaded claim coincidentally supports an unpleaded theory of recovery. Quillen, 789 F.2d at 1044. Indeed, the district court acknowledged that the plaintiff's evidence which supported a conversion claim "was also directed towards the establishment of the Plaintiff's due process claims."

The record lends no support for either of these findings by the district court. Not only did the plaintiff never invoke the court's supplemental jurisdiction or raise the conversion cause of action at any time in the proceedings, at one point, as we detail below, the plaintiff affirmatively denied that there was any claim at issue"for recovery of property or its value."**4** Further, amendment pursuant to Rule 15(b) was not proper here where the defendant never conceded implicitly or explicitly that a conversion claim was at issue.

Our review of the record begins with the complaint itself. Rule
_____

**4** See note 2, supra.

12

8(a)(2) provides the threshold requirement that a claim for relief shall contain "(1) . . . the grounds upon which the court's jurisdiction depends, . . . (2) a short plain statement of the claim showing that the pleader is entitled to relief . . . . and (3) a demand for judgment." Fed. R. Civ. P. 8(a)(2). With regard to a claim for conversion, Pinkley's complaint fails two of these basic requirements. First, nowhere in the complaint does the plaintiff invoke the supplemental jurisdiction under 28 U.S.C. § 1367(a), a prerequisite for jurisdiction of a pendent or ancillary claim. Second, the complaint nowhere states there is a claim under state law for conversion, the relief granted and now sought. While the third count bears the title "loss of property, profit, etc." the body of that count alleges that the taking was "wrongful unconstitutional conduct." Thus it as much or more closely follows the constitutional claims of the two preceding counts, and thereby failed from the outset to give the defendants fair notice that they might be facing a conversion claim.

We recognize that even where the pleadings initially do not provide notice of a claim, it is possible, as the district court noted, under Rule 15(b) for a claim to be put into issue at trial if "the issues not raised in the pleadings have been tried by the parties' express or implied consent." Quillen, 789 F.2d at 1043. Here, however, the record indicates that the defendant never acceded to the conversion claim, either expressly or implicitly.

Our conclusion that the conversion claim was never properly at issue as the case proceeded is supported by the pretrial order. Federal Rule of Civil Procedure 16(e) provides that the pretrial order "shall control the subsequent course of action."

The pretrial order was submitted jointly by the parties and lists under a separate heading "Legal Theories relied upon by Plaintiff in each claim." It then sets out in seven numbered paragraphs, 1-7 inclusive, its legal theories for recovery. The order sets forth only theories sounding in the First, Fourth and Fourteenth Amendments to the Constitution. It nowhere mentions a claim for conversion or any state or pendent claim. Thus, even if the plaintiff initially had a colorable argument that Count Three of the complaint had somehow stated a conversion claim, the failure to include a conversion claim in the pretrial order would have removed it from issue.

13

As the proceedings advanced, there was nothing in the record to show that the plaintiff introduced a claim for conversion. The plaintiff's trial brief, consistent with the earlier pleadings and pretrial order, alleges violations of the plaintiff's rights under the First, Fourth and Fourteenth amendments, but none of the nine issues stated presents a state conversion claim. At this point we note that the word "convert" is used in question 3(j) with relation to a "federal constitutional" claim, and the word "conversion" in question 8 with relation to punitive damages. Moreover, the defendants' trial brief, rather than somehow implicitly admitting that conversion was part of the trial, does the opposite. The defendants' brief states that although the plaintiff is alleging federal constitutional violations, really all the plaintiff has is the possibility of a state conversion claim, which should appropriately have been brought in a state court. "This case, at best, is a conversion case that belongs in State court, where Plaintiff can pursue adequate remedies." To take this as acceding to the litigation of a conversion claim is surely a misunderstanding of the language used.

Defendants note that throughout the trial itself, they never conceded that a state conversion claim was at issue in the trial. They observe that the plaintiff in its opening statement did not mention a conversion, state-law, or pendent claim. Further, at the close of the plaintiff's case, in the defendants' motion for judgment, the defendants explicitly stated that there were no state claims at issue.

> It's our position in this case, very specifically, in framing a motion for judgment at this time, that there are two prongs that the Plaintiff has alleged. The first prong is the First Amendment prong of this case. The second is the due process prong. <u>There are no state law claims in this case</u>.

(Emphasis added). Neither the plaintiff nor the court took issue with the defendants. The defendants' counsel continued by addressing the constitutional claims, stating:

> I think Plaintiff has an argument in state court. I think there's factual components to dispute that, but they have an argument that the property was converted. But, they don't have a constitutional claim for due process . . . .

14

The plaintiff's rebuttal to this was not to assert it was also stating a conversion claim, but rather was limited to an argument as to the principles underlying the constitutional claims. Plaintiff did not suggest it was entitled to judgment under a conversion claim, and at no point did the plaintiff seek to amend its complaint.

The City also properly argues it was prejudiced by the fact that it had several defenses under state law to a conversion claim which, of course, it did not present in the district court because the issue was not tried. Among them are questions of damages; abandonment; contraband; notice; timeliness; and negligence or nonfeasance in performing a governmental function. While we express no opinion on the validity of any of such defenses, we leave them to the state courts and mention them only to acknowledge that they have arguable merit, and the denial of an opportunity to present them was prejudicial.

Finally, the plaintiff's post-trial memorandum states explicitly:

> This is not a complaint for recovery of property or of its value but it is based on defendant's abridgement of fundamental constitutional rights.

We agree with the First Circuit that "[i]t would not serve the interests of justice . . . to redeem a totally unpleaded, unlitigated claim in circumstances that threaten significant prejudice to a defendant." Rodriguez, 57 F.3d at 1171.

IV.

Pinkley claims error in the district court's judgment in favor of all of the defendants on Counts One and Two of the complaint. That judgment is affirmed for the reasons stated by the district court in its opinions.

Pinkley also claims error in the district court's failure to enter judgment against the defendants Servacek, Gearinger, Lammers and Ashton as to Count Three of the complaint. Because the district court had no jurisdiction to decide Count Three of the complaint, the dismissal of Count Three of the complaint on remand without prejudice for lack

15

of jurisdiction will also apply to those four defendants, and any claim of error with respect to any failure to enter judgment against them is moot.

In summary, the judgment of the district court is affirmed as to its action with respect to Counts One and Two of the complaint.

As to Count Three of the complaint, the judgment against the City under state law for conversion, the district court, while it may have had at the beginning of the case the right to assert its supplemental jurisdiction under 28 U.S.C. § 1367(a) if properly developed, even though not initially claimed in the complaint, in view of the agreed-upon pre-trial order which removed that issue from the case, even if present; the post-trial memorandum of the plaintiff; the positions the parties took during this proceeding in the district court; and the prejudice to the defendant which is apparent from the record; we are of opinion the district court abused its discretion in considering the merits of this supplemental or pendent claim under state law.

The judgment of the district court in favor of the plaintiff on Count Three of the complaint is vacated, and on remand the district court will dismiss Count Three of the complaint without prejudice for lack of jurisdiction.

No. 96-1447 - VACATED AND REMANDED
WITH INSTRUCTIONS

No. 96-1448 - AFFIRMED

16