**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1789**

---

JAWONE D. NICHOLSON,

        Plaintiff – Appellee,

   v.

DAMOND DURANT,

        Defendant – Appellant,

   and

BALTIMORE POLICE DEPARTMENT; MAYOR AND CITY COUNCIL OF BALTIMORE CITY; STATE OF MARYLAND,

        Defendants.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah K. Chasanow, Senior District Judge.  (1:20-cv-03146-DKC)

---

Argued:  September 10, 2025                Decided:  December 18, 2025

---

Before GREGORY, AGEE, Circuit Judges, and Roderick C. YOUNG, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge Agee and Judge Young joined.

---

**ARGUED:**  Walter Preston Battle IV, BAKER DONELSON, Memphis, Tennessee, for Appellant.  Cary Johnson Hansel, III, HANSEL LAW, P.C., Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Thomas H. Barnard, BAKER DONELSON, Baltimore, Maryland, for Appellant.  Tiana Boardman, HANSEL LAW, PC, Baltimore, Maryland, for Appellee.

---

GREGORY, Circuit Judge:

In 2024, a jury awarded Jawone D. Nicholson $250,000 in compensatory damages for the emotional damages he suffered from an encounter where Damond Durant, an off-duty Baltimore City police officer, brandished a gun at then-sixteen-year-old Nicholson. After the jury found Durant grossly negligent in his capacity as a private person, Durant filed a Federal Rule of Civil Procedure 59(e) Motion to Alter or Amend the Judgment, and, in the alternative, for New Trial Nisi Remittitur. Durant contended that the district court should not have submitted a state law claim for "gross negligence as a private person" to the jury. He claimed that he had no notice that any state law claim was proceeding against him in his capacity as a private person, rather than as a police officer. Durant also argued that the jury's compensatory damages award was grossly excessive. The district court denied his motion on both grounds.

Durant appeals the denial of his post-judgment motion. He also makes two arguments for the first time on appeal: first, that the district court lacked supplemental jurisdiction over the "gross negligence as a private person" claim, and second, that the district court plainly erred by not providing a contributory negligence defense to the jury.

For the reasons that follow, we affirm the district court's ruling and reject Durant's new arguments on appeal.

\* \* \*

3

I.

A.

On November 10, 2017, Nicholson and his friend, Brian Hatcher, were standing under a carport near Nicholson's house in Columbia, Maryland. The boys were waiting to be picked up for their after-school mentorship program, but the van that usually transported them was late that day. Durant—who was off-duty at the time—saw the two boys waiting in the carport as he was returning home from a firearms training. He approached them, though he testified at trial that he was not scared or intimidated when he first saw the two boys. J.A. 964. At the time, he was in plain clothes and carried a Glock 43 handgun in the front pocket of his sweatshirt. He also testified that he likely had a knife clipped on his pants pocket with the clip showing.

Durant then began questioning the boys, asking them whether they lived in the neighborhood. The boys confirmed that they lived in the area and were awaiting their transportation. When Durant continued to probe at who the boys were and why they were waiting in the carport, the boys asked why Durant was so interested in their behavior. In response, Durant said "somebody might call the police." Hatcher responded, "Okay, do that." J.A. 1084. Durant replied, "I knew you all wasn't going to do shit." And he pulled his handgun out of his hoodie pocket and held it out in front of him. J.A. 1042–43.

Durant described the handgun as at the "low ready."[1] J.A. 1042–43. A gun held at low ready is held in front of the officer at a 45-degree angle, needing only a slight lift to be

---

[1] At oral argument, Durant's counsel represented that the officer had held his gun "at his side." Oral Arg. 9:00-04. This contradicts testimony at trial. J.A. 1042–43.

4

directed at the victim's center mass.  Oral Arg. 17:03-18; J.A. 1042–43.  The gun had no external safety, and a round was in the gun's chamber.  Durant testified that the gun was "ready to fire" and all he "needed to do was pull the trigger."  J.A. 988.  Both Nicholson and Hatcher immediately put their hands up.  Nicholson "thought it was over," that Durant "was going to kill both of [them]."  J.A. 1086.

With Durant's gun drawn, Nicholson rushed out of the carport toward his house and called his grandmother.  He was "screaming," sounded "terrified," and "was breathing and calling [his grandmother's] name over the phone."  J.A. 1139.  Upon receiving Nicholson's call, Nicholson's grandmother and mother ran out the door to find him.  Durant continued to brandish his firearm until the boys left.  After the boys began walking away from the carport, however, Durant followed "five to seven steps" behind Nicholson, J.A. 1089–90—Durant had called the police and wanted to give the police a good description of the two boys.  Nicholson's mother, grandmother, and sister-in-law arrived shortly after.  The police also arrived, disarmed Durant, and got statements from the parties.  This took nearly two hours.

The incident with Durant had a tremendous impact on Nicholson.  Prior to the incident, Nicholson was, in his grandmother's words, a "fun loving" and "playful" child who always wanted to be "hugged and held."  J.A. 1139.  His mother described him as "sensitive," someone who "always wants to take care of everyone else."  J.A. 874.  But after the incident, his family described him as withdrawn, glum, and no longer talkative.  He distanced himself from everyone and did not want to leave his house.

The site of Nicholson's encounter with Durant tormented Nicholson in the months after the incident.  Nicholson had previously walked to school daily, but because his walk to school

5

passed the site of his encounter with Durant, Nicholson would ask his mother or grandmother to walk with him. Some days, he would tell his mother he did not want to go to school because he was "[t]raumatized" and "scared to even go that way in general." J. A. 1102. Because Nicholson's room faced the path where the incident with Durant occurred, he would not go into his room at night or during the day. He struggled with sleeplessness and would sleep downstairs or on the floor of his mother's bedroom. And he would cry frequently, nearly every night.

In January, Nicholson enrolled at a military boarding school an hour away from home. He had previously not wanted to attend, but he believed it would allow him to put physical distance between himself and the incident with Durant instead of trying to move his family out of the neighborhood. Nicholson testified that he was also concerned for his family's safety since they were "still living in the same house." J.A. 1104. Eventually, Nicholson's family moved, too.

In February 2018, approximately three months after the incident, Nicholson filled out a stress questionnaire at school. He stated in the questionnaire that he regularly felt nauseous and tired and that he often felt depressed and irritated. He testified that his nausea, irritation, and depression were because of the incident. He also testified that he often woke up tired because his mind would be racing about the incident and he was unable to sleep.

The incident with Durant changed the way Nicholson interacts with the police. When he sees law enforcement officers in public now, he becomes scared and takes detours to escape them.

## B.

Nicholson brought suit under 42 U.S.C. § 1983 against the State of Maryland, the Baltimore Police Department, the Mayor and City Council of Baltimore, and Durant. All

claims against the State of Maryland, Baltimore Police Department, and the Mayor and City Council of Baltimore were dismissed at the Federal Rule of Civil Procedure 12(b)(6) stage, and certain claims against Durant were dismissed at summary judgment.

At the final pretrial conference, the parties discussed whether a state law gross negligence claim was proceeding against Durant in his capacity as a private citizen. Nicholson's counsel represented that he had conversations with Durant's counsel making clear that Durant could face personal liability for gross negligence, even if he could only be found liable on the remaining claims if the jury determined that he was acting in his capacity as a police officer. Durant's counsel did not "disagree with counsel that [they] had these discussions." J.A. 769–70.

The district court ultimately submitted five claims against Durant to the jury: two federal constitutional claims, two state constitutional claims, and a state law gross negligence claim. The jury verdict form contained two gross negligence theories: one against Durant in his capacity as a police officer and one against Durant in his capacity as a private person. After a three-day trial, the jury found for Durant on all state and federal constitutional claims but found that Durant was grossly negligent in his capacity as a private person. J.A. 723. The jury awarded Nicholson $250,000 in compensatory damages.

Durant filed a Federal Rule of Civil Procedure 59(e) Motion to Alter or Amend the Judgment, or in the alternative, for a New Trial Nisi Remittitur. J.A. 1200. The basis for Durant's Rule 59(e) motion was the district court's decision to submit a "gross negligence as a private person" claim to the jury. Durant argued that Nicholson's Amended Complaint only included a gross negligence claim against Durant in his capacity as a police officer,

7

rather than a private citizen. J.A. 1591. Nicholson filed an opposition, J.A. 1377, and Durant replied. J.A. 1577. The district court denied Durant's 59(e) motion. J.A. 1589. Durant timely appealed.

On appeal, Durant argues that Nicholson never pleaded a gross negligence claim against Durant as a private citizen. Consequently, he contends that the district court abused its discretion in *sua sponte* asserting supplemental jurisdiction over the claim under 28 U.S.C. § 1367(a). Durant also claims that the district court erred in upholding the jury's $250,000 compensatory damages award. Finally, Durant argues for the first time on appeal that the district court committed plain error in failing to *sua sponte* instruct the jury as to the potential defense of contributory negligence to the "alternative" "gross negligence as a private person" claim.

We will address each argument in turn.

## II.

We review the district court's determinations under Rule 59(e) for abuse of discretion. *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010). A Rule 59(e) motion "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Id.* at 411. A court's decision is free from "clear error" when it is "factually supported and legally justified." *Hutchinson v. Staton*, 994 F.2d 1076, 1081–82 (4th Cir. 1993). "Mere disagreement does not support a Rule 59(e) motion." *Id.* at 1082.

8

We review for abuse of discretion the district court's decision to exercise supplemental jurisdiction over a state law claim. *Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011). "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012).

Where a party has failed to request a jury instruction as to a possible defense, we review the district court's failure to instruct the jury as to that defense for plain error. *Gregg v. Ham*, 678 F.3d 333, 338 (4th Cir. 2012). Applying plain error review, we will not reverse unless the party can establish: "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines . . . that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal citations omitted).

A district court's ruling on a motion for a new trial "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004). A court may order a new trial nisi remittitur if it "concludes that a jury award of compensatory damages is excessive." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 502 (4th Cir. 2007). "Pursuant to this standard, we must give the benefit of every doubt to the judgment of the trial judge, while recognizing that there must be an upper limit to allowable damages." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672 (4th Cir. 2015) (internal citations and quotation marks omitted) (cleaned up). A district court assesses excessiveness of a jury's

9

damages award for a state law claim under state law standards. *Stamathis*, 389 F.3d at 438 (citing *Gasperini v. Center for Humanities*, 518 U.S. 415, 438 (1996)).

A.

Durant contends that Nicholson's Amended Complaint did not properly plead recovery for "gross negligence as a private person." He does not dispute that Nicholson stated a claim for "gross negligence as a police officer." Instead, Durant claims that because each count in the operative complaint incorporates every paragraph not falling under that count, including the allegation that "[a]t all relevant times, Defendant Durant acted under color of State law" and was "acting under his authority as a Baltimore City police officer," J.A. 25, Nicholson did not properly plead gross negligence against Durant as a private citizen. So, as a consequence, Durant argues that he was not on notice that the jury would consider an alternative theory of recovery for gross negligence as a private person.

Nicholson counters that Maryland law recognizes no distinction between "gross negligence as a police officer" and "gross negligence as a private person," so Nicholson did not need to plead additional facts relevant to the "private person" claim. To support his argument, Nicholson notes that official immunity does not protect police officers who engage in grossly negligent acts. And, even if there was a distinction relevant to the legal analysis at issue, Nicholson argues that the allegations in the Amended Complaint, broadly construed, put Durant on notice that the gross negligence claim could proceed against him in his private capacity.

10

Though we disagree with the district court's chosen vehicle for analyzing this issue,[2] we hold that the district court did not abuse its discretion in denying Durant's Rule 59(e) motion because Durant failed to demonstrate any clear error or manifest injustice resulting from the court's submission of this claim to the jury.[3]

The district court properly determined that the allegations in the complaint sufficed to state a claim for gross negligence as a private person. The complaint states that "When Defendant Durant stopped, interrogated, and brandished a weapon at Plaintiff, he had no constitutional *or* legally valid basis for doing so. Defendant Durant's claim that he had never seen Plaintiff before did not give Defendant Durant the authority to stop, interrogate, and use force against Plaintiff." J.A. 40 (emphasis added). The first allegation's use of the disjunctive term "or" supports the conclusion that Nicholson pleaded that Durant's conduct violated both his duty as a police officer and his duty as a private person: the "constitutional basis" references Durant's duty as a state officer and the "legally valid basis" references Durant's duty as a private citizen. *See Rush v. Kijakazi*, 65 F.4th 114, 119 (4th Cir. 2023), *cert. denied sub nom. Rush v. O'Malley*, 144 S. Ct. 999 (2024) (noting that the "ordinary use of the word 'or' is almost always disjunctive, that is, the words it

---

[2] The district court believed the proper vehicle for analyzing Durant's motion was Rule 15(b)(1). We disagree. Rule 15(b)(1) applies when a party objects to evidence presented at trial that is not within the issues raised in the pleadings. *See* Fed. R. Civ. P. 15(b)(1). Durant did not object to evidence presented to support the "gross negligence as a private person" theory at trial. Instead, Durant contends the "gross negligence as a private person" issue itself was not raised in the pleadings at all.

[3] Durant does not argue that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice.

connects are to be given separate meanings") (internal citations and quotation marks omitted).

Nicholson's operative complaint also states that

In the alternative, Defendant Durant's brandishing a firearm at Plaintiff, a minor child, on the sole basis that he had never seen Plaintiff before constituted an intentional failure to perform a manifest duty *and* abide by the constitutional limits of policing in reckless disregard of the consequences as affecting the life of another, and evinced a thoughtless disregard of the consequences to Plaintiff's life without the exertion of any effort to avoid those consequences, putting Plaintiff in danger.

J.A. 40–41 (emphasis added).  This allegation's use of "and," a "coordinating junction" designed to "link[] independent ideas," *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011), indicates that two theories of liability proceeded against Durant:  one for misconduct as a police officer, and one for his general gross negligence—including negligence in his capacity as a private person for "intentional failure to perform a manifest duty."  J.A. 40–41.

Nicholson also included allegations under certain state law counts that, "[i]n the alternative, Defendant Durant's unconstitutional deprivation of Plaintiff's liberty on the invalid basis that he had never seen Plaintiff before constitutes gross negligence, and Defendant Durant *is personally liable for his conduct*."  J.A. 32, 34, 36 (emphasis added). Those allegations, which are expressly and alternatively limited to *personal* liability for gross negligence, all followed paragraphs discussing Durant's liability for his misconduct as a police officer.  Taken together, the allegations sufficed to put Durant on notice that he

12

could be held liable for his misconduct, even if the jury found that he acted as a private citizen. The district court did not clearly err in holding as such.[4]

Moreover, Durant has not articulated how the district court's submission of this claim to the jury caused any "manifest injustice." The district court correctly rejected Durant's vague argument that he was barred from engaging in any discovery or moving for judgment on the claim before trial because, as the court noted, "[t]he facts giving rise to the gross negligence as a private person cause of action" were "the same as those in all other claims." J.A. 1599–60. And at oral argument, Durant's counsel was unable to identify any way Durant was tangibly prejudiced by any lack of notice. Durant's counsel also did not contradict Nicholson's counsel's statement at the final pretrial conference that they had previously discussed the gross negligence by a private person claim, putting Durant's counsel on notice that a claim would proceed against Durant in his private capacity. Nor did Durant's counsel request a continuance on that basis prior to trial.

In sum, the district court did not abuse its discretion in submitting the gross negligence claim to the jury.[5]

---

[4] We acknowledge that Nicholson could have more clearly articulated that the gross negligence claim proceeded against Durant as both a police officer and as a private citizen. However, Nicholson was ultimately only required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" under Federal Rule of Civil Procedure 8(a)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). He did so here.

[5] Because we believe Durant had sufficient notice of this claim, we need not address Nicholson's argument that there is no legal distinction between gross negligence by a private citizen and gross negligence by a police officer.

13

B.

For the first time on appeal, Durant argues that the district court did not have supplemental jurisdiction over the "gross negligence as a private person" claim where Nicholson failed to specifically plead the supplemental jurisdiction statute in his operative complaint and the complaint contained no "clearly pleaded" facts permitting the district court to exercise supplemental jurisdiction *sua sponte*.[6]  For this proposition, Durant principally relies on *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 399 (4th Cir. 1999), where we determined that the district court abused its discretion in exercising supplemental jurisdiction over an unpleaded state law claim.  *Id.* at 403.

However, *Pinkley* is distinguishable from this case because that plaintiff never pleaded *any* state law conversion claim.  Nor did the parties ever characterize any claim in their suit as a state law conversion claim. *Id.* at 401.  Indeed, the *Pinkley* plaintiff's post-trial memorandum stated explicitly:  "This is not a complaint for recovery of property or of its value but it is based on defendant's abridgement of fundamental constitutional rights." *Id.* at 402.  We determined that because defendants had never consented to the conversion claim "expressly or implicitly," the conversion claim could not properly be "put into issue at trial," *id.* at 401—let alone provide the basis for a judgment against the opposing party.  Indeed, defendants' counsel explicitly stated that there were "no state law claims in this case," and plaintiff never rebutted this.  *Id.*

---

[6] The parties disagreed as to the standard of review we should employ for the jurisdictional question.  Durant states that a district court's determination as to its subject-matter jurisdiction is a question of law we generally review *de novo*.  But, as Nicholson correctly states, we review for abuse of discretion the district court's decision to exercise supplemental jurisdiction over a state law claim.  *Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011).

14

at 402. We accordingly concluded that the district court abused its discretion in asserting supplemental jurisdiction over the unpleaded state law conversion claim. *Id.* at 403.

But whatever clearly pleaded allegations are necessary to allow a district court to assert supplemental jurisdiction absent an explicit reference to 28 U.S.C. § 1367, the allegations in this case suffice. Here, as discussed above, the allegations set forth in Nicholson's complaint sufficed to put Durant on notice that a claim was proceeding against him in his personal capacity. The case before us is not one where the evidence "incidentally tends" to establish a claim that was never pled. *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 987 (4th Cir. 2015) (Gregory, J., concurring in part and dissenting in part (citing *Pinkley*, 191 F.3d at 401)). And Durant has never indicated that the facts giving rise to the state law "gross negligence as a private person" claim differ from those giving rise to the "gross negligence claim as a police officer" claim. *See* J.A. 1599–60 (court below noting that "[t]he facts giving rise to the gross negligence as a private person cause of action" were "the same as those in all other claims"). Nor could he.

Additionally, unlike the plaintiff in *Pinkley*, who never pled or claimed to plead a state law conversion claim, Nicholson expressly included a state law gross negligence claim in his complaint.

Thus, the district court did not abuse its discretion in exercising supplemental jurisdiction over the "gross negligence as a private person" claim.

## C.

Durant argues that the district court failed to *sua sponte* instruct the jury as to a contributory negligence defense after Durant withdrew his request for such an instruction.

15

He claims that the district court's failure to provide this instruction constrained his ability to present his defense on the "gross negligence by a private person" claim. Because Durant raises this for the first time on appeal, we must determine whether this failure constituted plain error. *See* Federal Rule of Civil Procedure 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.").

It is not clear whether contributory negligence is an established defense to gross negligence under Maryland law. *See Liscombe v. Potomac Edison Co.*, 303 Md. 619, 636–37 (1985) ("[W]e shall assume, without deciding, that contributory negligence is not a defense in tort cases in which gross negligence has been shown."); *Saba v. Darling*, 72 Md. App. 487, 492 (1987), *aff'd*, 320 Md. 45 (1990) ("[W]hether 'simple contributory negligence' is a bar to an action of gross negligence is a question whose answer must await another day.").[7]  But even assuming arguendo that the district court could have instructed the jury as to contributory negligence, its failure to do so was not plain error.

In *United States v. Williams*, 604 F.2d 277, 281 (4th Cir. 1979), we held that trial courts, while required to instruct the jury on all elements of an *offense*, do not commit plain error when they fail to instruct the jury as to a possible *defense*—particularly where the party put forth no evidence at trial supporting that defense. There is no evidence in this

---

[7] Durant cites to our precedent in *Ramos v. S. Maryland Elec. Co-op., Inc.*, 996 F.2d 52, 54–55 (4th Cir. 1993), where we noted that Maryland has "never held that contributory negligence does not bar gross negligence." But even so, we did not definitively determine in *Ramos* that contributory negligence *is* a defense to gross negligence under Maryland law.

case—and Durant does not point to even hypothetical evidence—that Nicholson was contributorily negligent. The record provides no indication that Nicholson acted in any way that may have rendered his actions contributorily negligent where he was waiting under a carport for his ride and Durant approached him, questioned him, and ultimately pulled out his gun, at which point Nicholson held up his hands and walked away.

Though Durant contends that he would not have withdrawn his request for instructions as to the contributory negligence defense if he knew of the "gross negligence as a private person" claim, Durant does not specify why the contributory negligence defense would be more relevant to a claim pertaining to Durant's private capacity.[8]

The purported error also did not affect Durant's substantial rights or the fairness, integrity, or public reputation of judicial proceedings. To affect an individual's substantial rights, "there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Cabrera-Rivas*, 142 F.4th 199, 213 (4th Cir. 2025) (citing *Greer v. United States*, 593 U.S. 503, 507–08). Notably, Durant bears the burden of proof on this prong and "faces an uphill climb in trying to satisfy it." *United States v. Heyward*, 42 F.4th 460, 465 (4th Cir. 2022) (internal citations omitted).

Durant did not make a specific showing of prejudice, aside from stating that he would have raised the contributory negligence defense. Based on the record before us, it

---

[8] It is likely that, as Nicholson argues, Durant withdrew his request for a contributory negligence instruction once it was clear that the simple negligence claim would not be moving forward, given the ambiguity around whether contributory negligence is a defense to gross negligence under Maryland law. Resp. Br. 34–35. Durant does not address this argument in his reply brief.

17

is hard to imagine what evidence Durant could point to in support of a contributory negligence defense. And if there was any evidence indicating that Nicholson was contributorily negligent, that defense would be equally applicable to the "gross negligence as a police officer" claim. Once it was clear to Durant that the gross negligence as a private person claim would be proceeding to trial, Durant could have asked the court to provide an instruction as to contributory negligence. But he never did. In these circumstances, we cannot say that any inaction by the district court impacted the outcome or fairness of the proceedings. The district court did not plainly err in failing to *sua sponte* instruct the jury about a contributory negligence defense.

### D.

Finally, we affirm the district court's ruling denying remittitur of the compensatory damages award. Durant argues that the jury verdict was excessive because: (1) the jury heard no evidence about any medical treatment Nicholson received; (2) the district court failed to analyze inconsistencies in witness testimony bearing on Nicholson's injuries; (3) the November 10 incident did not justify the damages awarded; and (4) the district court failed to analyze the impact of counsel's closing statement appealing to societal standards to the jury on the excessiveness of the compensatory damages award. We do not find that any ground Durant identifies mandates remittitur of the jury's verdict.

Under Maryland law, a jury verdict is excessive when it "shocks the conscience of the court." *Banegura v. Taylor*, 312 Md. 609, 624 (1988) (citing *Conklin v. Schillinger*, 255 Md. 50, 69 (1969)). It must be such that "all mankind" is "ready to exclaim against [it], at first blush." *Conklin*, 255 Md. At 69.

18

Maryland courts recognize that "the trial court has broad discretion to determine whether a jury's damages award is so excessive that it warrants a new trial." *Hebron Volunteer Fire Dep't, Inc. v. Whitelock*, 166 Md. App. 619, 628 (2006). They have consequently cautioned courts against "substitut[ing their] judgment for the jury's." *Brooks v. Jenkins*, 220 Md. App. 444, 476 (2014). We will not vacate a jury's damages award simply because we disagree with it, particularly where the trial court has chosen not to do so.

The verdict in this case does not meet the high bar established under Maryland law. As an initial matter, Durant emphasized in briefing and at oral argument that the damages award was excessive because the "relatively brief encounter" consisted of an individual simply "display[ing]" a gun without pointing it at anyone. Durant's argument ignores wholesale the impact of introducing a firearm—and, accordingly, the possibility of death—to an interaction, particularly one where the victim is a 16-year-old child. And, as discussed above, the gun was not simply "displayed"—it was at the "low ready," mere inches away from targeting Nicholson's center mass.

Next, Durant claims that the compensatory damages award was not proportional to the actual injury incurred by Nicholson in part because Nicholson did not seek compensation for "medical, psychiatric, or psychological treatment." Opening Br. 50. Maryland courts have indeed vacated jury verdicts for emotional distress damages where plaintiffs experienced no physical manifestation of their emotional distress. *Hoffman v. Stamper*, 385 Md. 1, 38 (2005) (striking $145,000 compensatory damages award where plaintiff did not present evidence of any physical manifestation of emotional stress);

19

*Wheeling v. Selene Fin. LP*, 473 Md. 356, 399 n.11 (2021) (noting that testimony that an individual felt "bad" or "upset," absent other physical injuries, would not suffice to prove emotional damages). But Nicholson introduced substantial evidence that he experienced physical repercussions from his severe emotional distress as a result of the incident. *See* J.A. 1617 (compiling record cites to Nicholson's mental distress).[9]

And, under Maryland law, an individual need not seek compensation for medical treatment to justify a compensatory noneconomic damages award. *See Brooks*, 220 Md. App. at 476 (upholding a jury verdict for $200,000 ($276,208.55 when adjusted for inflation) based primarily on testimony regarding emotional distress a family experienced after witnessing the shooting of their dog, even though the family's veterinarian bills only totaled $6,100); *Francis v. Johnson*, 219 Md. App. 531, 562 (rejecting argument that the compensatory damages award needed reducing because plaintiff presented no evidence that he had sought, received, or needed any psychological treatment). Both cases indicate that, under Maryland law, evidence of medical bills or medical treatment was not required to justify the $250,000 compensatory damages award.

---

[9] As the district court noted:

Nicholson, his mother, his sister, and his grandmother "testified credibly and consistently that before the incident at issue, Nicholson was social and enjoyed being outside and playing sports with friends, but that his demeanor changed after the incident. (ECF Nos. 142, at 36-37, 72-79, 95-96; 143, at 112-16, 128, 152, 158-63, 166-71, 196, 201-05). They testified that he became withdrawn; did not want to see friends; did not want to walk to school to avoid passing the location where the incident occurred; cried often; slept in his mother's and grandmother's rooms; called his family members constantly, even at a military school that ordinarily did not allow such frequent phone calls; did not eat much; experienced sleeplessness, nausea, and depression; began fearing and avoiding police officers; and in general was no longer himself." J.A. 1617.

Durant also identifies three factual inconsistencies he believes are relevant to the extent of Nicholson's emotional distress. Specifically: (1) whether the encounter with Durant was the reason Nicholson decided to attend military school; (2) whether the encounter with Durant made Nicholson fearful of the police; and (3) whether Nicholson's grades dropped after his encounter with Durant. But to the extent that there are any factual inconsistencies—which, based on the record before us, it does not seem like there are—it was the jury's responsibility to resolve these inconsistencies in its deliberations. We cannot say the district court abused its discretion in failing to weigh these purported inconsistencies in its decision to uphold the jury's damages award.

Finally, Durant argues that the district court failed to analyze the impact of counsel's closing statements on the potential excessiveness of the jury award. At closing, Nicholson's counsel stated that:

> It is incredibly important, as I said at the outset, that members of the community give their time to this process so that we can have justice in our country and so we can have standards for our community. And in this case, standards for when it's appropriate to draw guns on these children.

J.A. 1357. Nicholson's counsel continued:

> But is someone simply walking up behind you sufficient grounds to pull a firearm and put them in imminent fear of their life. And if it is, we live in a very different and very much more dangerous country than the ones – the one that the designers of our constitution and the designers of the law that we're here to apply have imagined.

*Id*. Durant argues that these statements were inappropriate because they asked the jury to consider matters separate from Nicholson's injuries and how much he should be compensated for his injuries.

21

We have repeatedly emphasized that "great latitude is accorded counsel in presenting closing arguments to a jury." *United States v. Johnson*, 587 F.3d 625, 632–33 (4th Cir. 2009) (citing *United States v. Ollivierre*, 378 F.3d 412, 418 (4th Cir. 2004)).  Our sister circuits have refused to order a new trial in the criminal context based on counsel's closing statements unless the statement is "false or without a basis in the record." *In re Isbell Recs., Inc.*, 774 F.3d 859, 872 (5th Cir. 2014) (citing *Wallner v. Ziegler*, 470 F. App'x 230, 233 (5th Cir. 2012)).  *See Hicks v. Collins*, 384 F.3d 204, 219 (6th Cir. 2004) (prosecution's statements that "it is time you sent a message to the community" and "the people in the community have the right to expect that you will do your duty" were not sufficiently "misleading, inflammatory, or prejudicial" to warrant new trial); *United States v. Ralston*, 973 F.3d 896, 910 (8th Cir. 2020) ("[A] mere reference to lamentable societal conditions is not synonymous with a '"community conscience" argument' seeking to inflame the jurors against the defendant.").

Our sister circuits have also recognized that only improper statements that are pervasive in a closing argument bear on whether a new trial is warranted.  *Burke v. Regalado*, 935 F.3d 960, 1034 (10th Cir. 2019) (improper statements expressing counsel's personal opinion did not warrant new trial where comments "appeared sporadically during the argument"); *United States v. Canty*, 37 F.4th 775, 792 (1st Cir. 2022) (noting that "[t]he emotional appeal to the jury to be other than finders of fact as to guilt was extensive, and was repeated at opening, closing, and at rebuttal," justifying a new trial).

Moreover, our sister circuits recognize that any prejudice imposed by improper closing statements is ameliorated by either an instruction that statements and arguments by

22

lawyers are not evidence or sustaining a defendant's objection as to the statements. *See In re Isbell Recs., Inc.*, 774 F.3d at 872 (stating that any prejudice as to closing remarks was offset by district court's instruction that "[s]tatements and arguments of the attorney are intended only to assist you in understanding the evidence and the parties' contentions and are not evidence of the facts or instructions on the law"); *United States v. Ayala-García*, 574 F.3d 5, 21 (1st Cir. 2009) ("We have at times found the district court's standard instruction, advising jurors that arguments of counsel are not evidence, adequate to dispel any prejudice from improper remarks.").

Here, Durant did not object to Nicholson's counsel's closing statements at trial. And the district court specifically instructed the jury that compensatory damages "must not be based on speculation or sympathy. They must be based on the evidence presented at trial." J.A. 742. *See also* J.A. 850 ("Statements, arguments and questions by lawyers are not evidence."). In line with case law from other circuits, even assuming impropriety of any closing remarks, these instructions cured any prejudice.

Given that the purportedly improper closing remarks were isolated and not pervasive and the district court provided curative instructions that statements by lawyers are not evidence, the district court did not abuse its discretion in failing to consider the closing remarks in its analysis of the excessiveness of the damages award.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*